## PETE STARK v. STATE.

No. A-1638. Opinion Filed October 18, 1913.

(135 Pac. 441.)

1. INDICTMENT AND INFORMATION—Allegations—Wrongfulness of Act—Assault with Intent to Kill—Information. It is not essential to the validity of an information for assault with intent to kill under section 2336, Rev. Laws 1910, that the word "wrongfully" be used.

2. APPEAL—Presumption of Irregularity. The proceedings of a court of record are presumed to have been regular and in due

form of law, and we must presume that the clerk or county attorney read the information and stated the plea of the defendant to the jury, unless the contrary appears from the record.

3.   SAME—Verdict.  It is the province of the jury to determine questions of fact and decide between conflicting inferences, and the duty of this court to interfere arises only when it can see that the verdict is contrary to the evidence or appears to have been influenced by passion or prejudice.

*Error from District Court, Stephens County;*
*Frank M. Bailey, Judge.*

Pete Stark was convicted of assault with intent to do bodily harm on an information charging assault with intent to kill, and brings error.  Affirmed.

*Stuart, Cruce & Gilbert,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J.  This appeal is prosecuted from a conviction had in the district court of Stephens county.  The verdict was guilty of assault with intent to do bodily harm, leaving the punishment to be fixed by the court.  The judgment and sentence was rendered November 9, 1911, and the punishment assessed at imprisonment in the penitentiary for a year and a day.

The information charged:

"The said Pete Stark, late of Stephens county, and within the jurisdiction of this court, did then and there willfully, unlawfully, feloniously, maliciously, and purposely, and with premeditated malice, make an assault, and then and there, at and against, and in contact with one Henry Bloomhoff, did feloniously, purposely, and with premeditated malice shoot a certain shotgun, then and there loaded with gunpowder and leaden bullets, which he (the said Pete Stark) then and there in his hands had and held, with the intent then and there him (the said Henry Bloomhoff) feloniously, purposely, and with premeditated malice to kill and murder, contrary to," etc.

The assignments of error relied upon for a reversal of the judgment are in effect as follows:  Error in overruling the demurrer to the information.  Error in overruling the objection of the defendant to the introduction of any evidence in the case

for the reason the county attorney did not read the information to the jury and state the defendant's plea thereto. That the verdict of the jury is contrary to law and is not sustained by the evidence.

Counsel contend that the information is demurrable because it does not use the exact words of the statute, in that the word "wrongfully" is omitted. Section 2336, Rev. Laws 1910, provides:

"Any person who intentionally and wrongfully shoots, * * * with intent to kill any person, * * * is punishable by imprisonment in the penitentiary not exceeding ten years."

The information does not use the exact words of the statute; but, if the act was feloniously done, it follows that it was wrongfully done. The precise words of the statute need not be used. See Procedure Criminal; section 5745, Rev. Laws 1910. However, the conviction was had upon an included offense as defined by section 2344, which provides:

"Any person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or airgun, or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

The information is unquestionably sufficient to charge the offense of which the defendant was convicted and we think sufficient to charge the higher degree, and the demurrer thereto was properly overruled.

The record shows that the county attorney made the opening statement for the state, and counsel for the defendant declined to make a statement at that time. The complaining witness was called, sworn, and certain questions asked him. Thereupon the record shows the following objection:

"The defendant objects to the introduction of further testimony because the information does not state facts sufficient to constitute a public offense, and for the further reason the proper

predicate has not been laid for the introduction of testimony. By the Court: Overruled and exception allowed."

Section 5870, Rev. Laws 1910, subd. 1, provides:

"If the indictment or information is for a felony, the clerk or county attorney must read it, and state the plea of the defendant to the jury. In other cases this formality may be dispensed with."

There is nothing in the record in this case to show that the information was not read by the clerk to the jury, and we must therefore presume that it was.

The evidence introduced by the state shows that the prosecuting witness, Henry Bloomhoff, and the defendant, Stark, lived on adjoining farms. Bloomhoff and defendant made a trade whereby Bloomhoff exchanged a buggy and pony, a mule, and some harness for the cotton, corn, cane, and three hogs, three head of cattle, six chickens, and certain farming implements, all belonging to defendant. The agreement further was to the effect that defendant would turn over the possession of the two-room house on defendant's farm to Bloomhoff. Defendant was planning to leave and go to Chickasha or Texas. The property mentioned was delivered to the respective parties, except the chickens, which were taken by Bloomhoff from defendant's place in his absence. Thereafter defendant went to Bloomhoff and accused the latter of stealing the chickens. There was some controversy as to what occurred upon defendant's visit to Bloomhoff's. Defendant took two of the chickens and was "fussing" about the trade. Bloomhoff returned the other four chickens. The misunderstanding as to the chickens resulted in some remarks of a violent character. On the day of the difficulty, there had been a rain which interfered with work in the hayfield. John Fritz, who had been assisting defendant in loading defendant's household goods, came to Bloomhoff and told him defendant had finished moving; and Bloomhoff and his father got in a wagon and drove over to the place which defendant had occupied. Young Bloomhoff took a hammer and some nails to close up the house. He got out of the wagon,

went up to the house, put his foot on the step, starting to go into the house, when defendant shot him with a shotgun; the wound being inflicted in his back. The door into which Bloomhoff started was in the south side of the house. There was a partition in the house, separating the east and west rooms. Defendant was behind the door in the partition and about ten feet away. When Bloomhoff was shot, he fell outside the door. Defendant came out and said to Bloomhoff, "You ———— ———— ———— ———— you, I will learn you something." Defendant's father was at the wagon. Defendant said to him, "Now, hike you ———— ———— ———— ———— you, or I will shoot you like the kid," and held the gun in a shooting position toward Bloomhoff's father. After the shooting, Harrison Jenkins, who had been in the east room, came out and said, "Search him." Bloomhoff told them he did not have anything. Defendant said, "I guess the officers will be after me right away." And further said, "Where is the best place to go, to Uncle John's or to my place." At the time Bloomhoff started into the house, he had in his hands the hammer and nails; he had started to close the house up. Bloomhoff had been there in the morning when defendant was loading up; the blinds were up. When he went there to close the house up, "the blinds were all down and everything closed up."

The defendant and his witness, Jenkins, testified that at the time of the difficulty they were in the house; that defendant was in the west room cleaning up; that when Bloomhoff came up defendant was at the middle door; that Bloomhoff came in and struck at defendant with the hammer, when defendant shot Bloomhoff; that Bloomhoff ran out of the door, defendant following; that defendant told Bloomhoff's father to get his team and get away. Defendant testified that, at the time Bloomhoff brought the chickens back, he delivered to Bloomhoff a horse collar which the latter claimed defendant had taken but which was not a part of the trade. He further says that at that time Bloomhoff used violent and abusive language in the presence of his wife; that he had him arrested for it; that he shot Bloomhoff to prevent the latter from hurting him; that at the time

Bloomhoff struck at him the gun was standing by the window; that he reached for it, got it, and shot Bloomhoff; that Bloomhoff was about six inches from him when the shot was fired. Later he said Bloomhoff was about three feet away when the shot was fired.

The jury are the exclusive judges of the facts proved and of the weight to be given to the testimony of each witness who testifies in the case. They had the witnesses before them and could see their manner of testifying, and they no doubt, in determining the truth, took into consideration all the attending circumstances of the case.

Where the verdict of the jury has been approved by the trial court, this court will not disturb the judgment, where there is evidence to support the verdict, unless it appears to be clearly wrong. It follows that, in the absence of errors of law prejudicial to the rights of the defendant, the judgment should be affirmed. Upon a careful examination of the record we find no such error.

The judgment of the district court of Stephens county is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.