## J. G. BOYKIN v. STATE.

No. A-10733.   Feb. 25, 1948.
(190 P. 2d 471.)
Rehearing Denied May 5, 1948.

176

David Tant, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, J. G. Boykin, was charged by information filed in the district court of Oklahoma county, with the crime of assault with a dangerous weapon which was allegedly committed October 26, 1931, by the said J. G. Boykin shooting one Ed Ashworth with a twelve-gauge double-barrelled shotgun and causing serious injuries in the hip, shoulder and leg of said Ed Ashworth.

The jury returned a verdict on January 26, 1932, finding the defendant guilty of the crime charged in the information and fixing his punishment at one year and one day in the State Penitentiary. The defendant was allowed to remain on bond and an order was made setting February 13, 1932, at 9:00 a. m. as the date for pronouncing judgment in accordance with the verdict of the jury. On February 12, 1932, a motion for a new trial was filed on behalf of the defendant. No appearance was made by defendant or counsel on February 13, 1932, which was the date set for pronouncement of judgment and sentence in accordance with the verdict of the jury, and no further order was made in said cause until July 19, 1945, when the defendant became involved in another altercation and the present county attorney of Oklahoma county, who was not the county attorney at the time of the prosecution in 1932, in checking the record for prior convictions of the accused, ascertained that no judgment had been pronounced upon the verdict of the jury and no action had been taken by the Oklahoma county district court on the motion for new trial interposed by counsel for defendant in 1932. At the request of the county attorney of Oklahoma county, the district court set the motion for new trial for hearing on July 19, 1945. At that time, counsel for defendant appeared and filed an objection to the jurisdiction of the court and contended that by rea-

son of the long lapse of time that the court had lost jurisdiction to pronounce judgment upon the verdict.

At the conclusion of the hearing on the plea to the jurisdiction of the court, counsel for the state and the defendant each presented a list of authorities supporting their respective contentions to the trial court for his consideration. The matter was thereupon taken under advisement for several days so that the court could study the legal authorities on the question involved. At the adjourned time, the Honorable Albert C. Hunt, district judge, who was the successor to the Honorable George W. Clark, deceased, who presided at the trial of defendant, gave a lengthy summation of the facts and discussed and analyzed the legal authorities cited by the defendant to support his position. We shall not undertake to set forth all that was said by Judge Hunt in his summation, but we shall quote enough of it to show that he saw the distinction between the authorities cited in support of defendant's theory and those authorities which we think govern the facts of this particular case. In fairness to Judge Hunt, we shall quote enough of his summary to show that the statement in the dissenting opinion herein that the trial judge was forced to make a hasty decision without time to study the authorities was erroneous. Judge Hunt, after reviewing the facts in the record, stated among other things:

"In connection with these authorities that have been cited, I find from examining them, that in all of them there was some affirmative act on the part of the court in undertaking to suspend or delay the time indefinitely for pronouncing the judgment and sentence. In some of the cases cited, the Judge even allowed the defendant to go on his own recognizance without any bond.

"I called attention to the fact that there was a bond made in this case, and an order made allowing the de-

fendant to stand on his bond, and I take it that the defendant has been standing on that bond and he has been at liberty on that bond ever since that order was entered by Judge Clark on January 26, 1932.

"Now, in this Collins case, the case of Collins v. State, [24 Okla. Cr. 117] 217 P. 896, which was cited and relied upon by counsel for the defendant, of course, the court holds in that case that it is the duty of the court on a conviction or plea of guilty to appoint a time for pronouncing sentence. In this case, the court did appoint a time for pronouncing sentence. This case also says that while the court may delay pronouncing judgment for the purpose of hearing and determining a motion for new trial or in arrest of judgment, or for other proper causes, it cannot indefinitely postpone pronouncing judgment and sentence.

"Now, there has certainly been no order of the court in this case, or no affirmative act on the part of the court, to indefinitely suspend the judgment or the pronouncing of the sentence. I find this quotation in the Collins case, after quoting certain provisions of our statute, it then says:

" 'Under the foregoing provisions, it is the duty of the court, on a conviction or plea of guilty, to impose sentence within a reasonable time. However, there can be no doubt that a court has the right to delay the pronouncement of judgment for the purpose of hearing and determining motions for a new trial or in arrest of judgment, or for other proper causes, but to suspend indefinitely the pronouncing of judgment and sentence after conviction is not within the power of the court.' "

"Now, in the case of People v. Reilly, 53 Michigan, 260 [18 N. W. 849], in stating the facts there, the court says that Reilly was convicted of robbery on October 22, 1881, and moved for a new trial, and on February 10, 1882, sentence was indefinitely suspended and he was admitted to bail on his own recognizance in the sum of $500. That was an affirmative act on the part of the court while that motion for new trial was pending in the case,

the court indefinitely suspended the sentence and admitted this man to bail on his own recognizance. The Judge says:

" 'I do not think it is competent for a Circuit Judge or other judicial officer to suspend indefinitely the sentence which the law makes it his duty to impose upon a person duly convicted, or who may plead guilty in his court. The effect of suspending sentence operates as a quasi-pardon.' "

"That is true, and, of course, the District Judge has no such right. That is the prerogative of the Governor. But in this case the District Judge did not suspend, or undertake to suspend, the sentence indefinitely or otherwise.

" 'It relieves the offender for the time being from the punishment which the law has prescribed shall be inflicted.' "

"That was an affirmative act on the part of the Judge. He took it upon himself to suspend the time of sentence indefinitely and let him out on his own bond, and, of course, the court says he cannot do that.

" 'The pardoning power under our Constitution is reposed in the Governor, and not in the Judges.' "

"Now then, they go ahead, this is the same opinion, it goes ahead to say though that:

" 'Temporary stay may also be granted where steps are taken for a new trial, but all these are steps in the progress of the case, taken for the purpose of bringing about change in the result.' "

"The status of this case when it comes to my attention is, here is a case long since been tried and counsel for the defendant filed a motion for new trial, and for some reason it was never passed on and never has been disposed of. The record does not show, and it is not apparent as to why it had not been passed on, but there is nothing in this record to indicate that there is any fault or blame to be attached to the court. The appearance

docket shows that the court acted promptly and expeditiously whenever the matter was before it, and fixed the time for sentence, and that the motion for new trial was filed before the time fixed for sentence. It appears from the docket that neither party saw fit to call that motion up, at least, it was not disposed of."

"I might say that I do not think it can be said it was the fault of the court, any more than it was of counsel on one side or the other, or on both sides, and, as I see the thing, I find in all these cases that hold that the court did lose jurisdiction, it is where the court undertook to exercise or do an affirmative act which was entirely beyond his jurisdiction to do; but in this case, the court did not do any affirmative act after that motion for new trial was filed. It was just allowed to remain undisposed of. It was an effort, as pointed out in this Michigan case, that was an effort taken on the part of the defendant during the progress of the case for the purpose of trying to bring about a change of the result and to have the judgment that had been rendered against him vacated and set aside, and a new trial granted."

"Of course, it is unfortunate that this thing has been allowed to remain undisposed of all this long time, but I just can't find any case where it definitely satisfies me at least, that this court has lost jurisdiction to pass on the motion for new trial."

"Of course, this may not be a controlling feature in it, but it may be considered, the fact that the defendant at least has not been prejudiced by it, and he has been out all this time and been out on bond; he has not been out on his own recognizance; and I just can't come to any other conclusion from an examination of this record and all the authorities cited, but that this court still has jurisdiction to pass on the motion for new trial, and the motion challenging the jurisdiction at this time will be overruled, and exception allowed."

After overruling the objection interposed by counsel for defendant to the jurisdiction of the court and upon

request of counsel for defendant, the court continued the hearing on the motion for new trial to allow counsel to prepare a transcript of the evidence so as to properly enable the court to pass upon the questions urged in the motion for a new trial.

On the postponed date after a hearing, the court overruled the motion for a new trial, and at the request of counsel for defendant, the time for pronouncing sentence was passed to October 5, 1945. On October 5, 1945, the defendant appeared in person and with his counsel, and the court pronounced judgment and sentence in accordance with the verdict of the jury, and the defendant has appealed.

The only question presented in the appeal is stated in defendant's brief as follows:

"The trial court erred in overruling the defendant's plea to the jurisdiction of said court and in attempting to render judgment and impose sentence in accordance with the verdict of the jury returned in said cause for the reason that more than thirteen years and five months had passed since said verdict of guilty was returned into court without the imposition of sentence thereon, there being no order entered postponing the pronouncement of said judgment and sentence."

This cause was twice argued to the court and counsel for both the state and the defendant have written excellent briefs presenting many authorities to sustain their respective views.

We have no statute providing that the judgment and sentence in a criminal case must be pronounced at any definite time. The only statutory limitation upon the authority of the court is that the judgment and sentence cannot be pronounced for at least two days after the verdict. 22 O. S. 1941, § 962.

This provision of the statute is intended to fix the minimum and not the maximum limit for the pronouncement of judgment. It is intended to prevent hasty and ill considered judgments, and to give defendants time for such further proceedings as they may deem necessary to protect their rights, including their right to file a motion for new trial, or in arrest of judgment. Dalton v. State, 6 Okla. Cr. 368, 118 Pac. 1001.

There is a decided conflict in the reported cases, as to whether a trial court loses jurisdiction to pronounce sentence against an accused where there has been an unreasonable delay in the pronouncement of sentence after conviction. This conflict is noted in 24 C. J. S., Criminal Law, § 1564, wherein it is stated:

"In some jurisdictions, if the court does not pronounce sentence within a reasonable time after the conviction and no sufficient cause for the delay appears, if the court, in other words, without justification indefinitely postpones the imposition of sentence, it loses jurisdiction to do so. In other jurisdictions, however, mere delay even beyond the term at which conviction was had does not deprive the court of jurisdiction to impose sentence subsequently or at a subsequent term, at least in the absence of a request by accused for earlier sentence, and the *general rule has been laid down that where there is a valid conviction the power of the court is not exhausted nor its duty completed until sentence is pronounced, and the cause remains pending, and stands continued with the unfinished business from term to term.*"

One of the best reasoned cases in support of the general rule is the case of Ex parte Dunn, 50 S. D. 48, 208 N. W. 224, 225. In that case, the defendant entered a plea of guilty to a charge of embezzlement. The trial court indefinitely postponed the pronouncement of sentence on a plea of guilty on condition that defendant repay the sum which had been embezzled at the rate of $50

per month. No date was ever fixed for pronouncing sentence until about eighteen months had passed. In disposing of the defendant's contention that the court had lost jurisdiction to enter the judgment by reason of the indefinite postponement of the time for pronouncing sentence, the Supreme Court of South Dakota stated:

"Applicant's further contention is that by an indefinite postponement of sentence the court loses jurisdiction over the defendant, and has no jurisdiction to enter judgment. On this question there is considerable conflict of authority, and applicant's counsel cite authorities so holding. Some of these decisions are from states having no statutes giving courts the power to suspend sentences. Others are cases in which the question is the converse of that involved in the instant case; that is, cases in which the trial courts are sought to be required to proceed with the enforcing or pronouncing of judgment, as in State ex rel. Callahan v. Hughes, 48 S. D. 95, 202 N. W. 285; State ex rel. Payne v. Anderson, 43 S. D. [630], 631, 181 N. W. 839. * * *

"It is apparent that the circuit court was in error in allowing its powers to be used, in a criminal action, for the enforcing of a collection from a defendant. It also exceeded its authority, and infringed upon the pardoning power of the executive department in suspending the pronouncing of judgment, with the evident intent of never pronouncing such judgment in case the defendant complied with certain agreements, including the payment of money.

"But what is the effect of such errors upon the issues now before this court? Habeas corpus goes to the question of jurisdiction, and to that question only. Did the erroneous acts of the circuit court of Minnehaha county cause it to lose its jurisdiction over the applicant? That is the ultimate question in this proceeding. If jurisdiction was lost, it is because the court sought to exercise pardoning power by an unreasonable and unau-

thorized postponement of the fixing of time for pronouncing of sentence and of the pronouncing of sentence.

"There are respectable authorities holding that jurisdiction is lost by such procedure, but the weakness of that view seems apparent. It amounts to saying that the court may not infringe upon the prerogative of the Governor by attempting to pardon one convicted of crime, but, if a court postpones pronouncing of judgment in such manner as to be equivalent to a pardon, the court loses jurisdiction to sentence, and the defendant must go free; thus allowing the court to accomplish by mere error what it is denied the power to do by direct act.

"The view of this court is that any error of a trial court in failing to do the things required by law, or any act of such court in excess of the powers conferred upon it by law, may be controlled or corrected by appropriate proceedings in mandamus or certiorari. But to hold that jurisdiction over one convicted of crime is lost by such errors would result in freeing a convicted criminal, and giving rise to wrong for which there would be no remedy. This view naturally leads to the adoption of the rule established by the line of decisions of which In re Bonner, 151 U. S. 242, 14 S. Ct. 323, 38 L. Ed. 149, cited with approval by this court in State v. Schaller [49 S. D. 398], 207 N. W. 161, is representative.

"*This rule, succinctly stated, is that, where the conviction is valid, the power of the trial court is exhausted only by the pronouncing of a valid judgment.* In re Bonner, 151 U. S. 242, 14 S. Ct. 323, 38 L. Ed. 149; 29 C. J. 57; State ex rel. Petcoff v. Reed [138 Minn. 465], 163 N. W. 984; In re Taylor, 7 S. D. 382, 64 N. W. 253, 45 L. R. A. 136, 58 Am St. Rep. 843; Neal v. State, 104 Ga. 509, 30 S. E. 858, 42 L. R. A. 190, 69 Am. St. Rep. 175; Ex parte Jackson, 107 Kan. 167, 190 P. 608: Ex parte Mitchell, 19 Cal. App. 567, 126 P. 856; State v. Tyree, 70 Kan. 203, 78 P. 525, 3 Ann. Cas. 1020; Fuller v. State [100 Miss. 811], 57 So. 806, 39 L. R. A., N. S., 242, Ann. Cas. 1914A, 98; Ledgerwood v. State, 134 Ind. 81, 33 N.

E. 631 [92 S. E. 212]; Cook v. Jenkins, 146 Ga. 704; Gehrmann v. Osborne, 79 N. J. Eq. 430, 82 A. 424, 425."

In McCall v. State, 167 Tenn. 329, 69 S. W. 2d 892, 893, the Supreme Court of Tennessee adhered to the general rule that where the verdict of guilt has been returned, the jurisdiction of the trial court is not exhausted until judgment is finally rendered. In the body of the opinion it is stated:

"It is customary for a judgment to be entered upon the return of the verdict. This, however, is not necessary. The court may enter an appropriate judgment upon the verdict at any time during the term or, if the matter is overlooked, at a subsequent term. Dunn v. State, 127 Tenn. 267, 154 S. W. 969; Greenfield v. State, 66 Tenn. 18."

See, also, Carnagio v. State, 106 Fla. 209, 143 So. 162; Dilley v. Commonwealth, 243 Ky. 464, 48 S. W. 2d 1070; Ex parte Hartley, 330 Mo. 338, 49 S. W. 2d 119, 120; Williams v. State, 99 Tex. Cr. R. 356, 269 S. W. 434; Beaird v. State, 217 Ala. 355, 116 So. 367; Ex parte Hardman, 131 N. J. L., 257, 36 A. 2d 213; Pace v. Horton, 194 Ga. 822, 22 S. E. 2d 805.

In Ex parte Hartley, supra, the Supreme Court of Missouri stated:

"Petitioner's chief claim is that the trial court has lost jurisdiction and is now powerless to bring the defendant into court at any succeeding term and sentence him on the verdict returned at the January term, 1932. In State v. Watson, 95 Mo. 411, 414, 415, 8 S. W. 383, and in State v. Schierhoff, 103 Mo. 47, 50, 15 S. W. 151, we have definitely ruled otherwise, on the theory that there is no final disposition of a cause until there is a final judgment, and a court does not lose jurisdiction of a case until final judgment is entered, though such be not done until a subsequent term. This is generally recognized in criminal cases."

The authorities from other jurisdictions chiefly relied upon by the defendant are the cases of Mintie v. Biddle, 8 Cir., 15 F. 2d 931; State v. Sapp, 87 Kan. 740, 125 P. 78, 42 L. R. A., N. S., 249; and People v. Barrett, 202 Ill. 287, 67 N. E. 23,, 63 L. R. A. 82, 95 Am. St. Rep. 230.

The decision of the Circuit Court of Appeals in Mintie v. Biddle, supra, was later considered by the Supreme Court of the United States and was expressly overruled. In Miller v. Aderhold, 288 U. S. 206, 53 S. Ct. 325, 77 L. Ed. 702, it is stated:

"The decisions on the point are in conflict. The greater number support the view of petitioner; but we are of opinion that the weight of reason is the other way. Several of the cases holding with petitioner are set forth in Mintie v. Biddle, 8 Cir., 15 F. 2d 931, 933. While these cases and others are emphatically to the effect that a permanent suspension of sentence is void, and that the court thereby, with the passing of the term, loses jurisdiction, we find no convincing reason in any of them for the latter conclusion. * * * Moreover, since the suspension order is void, the accused is not bound to rest under the supposed hardship. He may at any time put an end to it by requesting the court to pronounce judgment, which the court no doubt would do unless good cause to the contrary were made to appear. In the absence of such request he must be held to have consented to the indefinite delay, and cannot complain. Hoggett v. State, 101 Miss. 269, 271, 57 So. 811. Compare United States v. Mulligan, 2 Cir., 48 F. 2d 93; United States v. Lecato, 2 Cir., 29 F. 2d 694, 695. * * *

"We conclude, in accordance with what we regard as the better view, that in a criminal case, where verdict has been duly returned the jurisdiction of the trial court, under circumstances such as are here disclosed, is not exhausted until sentence is pronounced, either at the same or a succeeding term. Rachmil v. United States, 2 Cir., 288 F. 782, 785; Ex parte Dunn, 50 S. D. 48, 52—

54, 208 N. W. 224; Hoggett v. State, supra, at page 271 of 101 Miss., 57 So. 811; Hancock v. Rogers, 140 Ga. 688, 79 S. E. 558; Dilley v. Commonwealth, 243 Ky. 464, 468, 48 S. W. 2d 1070; Neace v. Commonwealth, 165 Ky. 739, 742, 743, 178 S. W. 1062."

Later the Circuit Court of Appeals for the Tenth Circuit, which includes the State of Oklahoma, considered this same question in the case of Zerbst v. Nahas, 67 F. 2d 742. The syllabus of that case reads:

"Defendant not requesting sentence on plea of guilty cannot complain of indefinite delay, and court retains jurisdiction until sentence is pronounced."

In the body of the opinion it is shown that the petitioner Nahas entered a plea of guilty on October 29, 1929, in the United States District Court to a charge of conspiracy to violate the prohibition law. The pronouncement of sentence upon the plea of guilty was overlooked by the court and the defendant was at liberty until the matter was called to the court's attention on March 15, 1932, at which time the court had the defendant brought before him and he was sentenced to serve eighteen months in the United States penitentiary. The petitioner sought his release from the penitentiary by habeas corpus. In disposing of this contention Judge Lewis stated:

"Appellee claims the court that sentenced him had lost jurisdiction on the facts stated, and that the sentence was void. The District Judge in issuing the writ and entering the order of discharge probably followed the rule announced in Mintie v. Biddle, 8 Cir., 15 F. 2d 931. It will be observed in the opinion in that case that the authorities were not in accord at that time. Since the writ issued and the order of discharge was entered the Supreme Court in Miller v. Aderhold, Warden, 288 U. S. 206, 53 S. Ct. 325, 326, 77 L. Ed. 702, passed on the sub-

ject. Mr. Justice Sutherland, who spoke for the court in that case, said that the greater number of authorities were in accord with the ruling in the Mintie case, but that the opinion of the court was that the weight of reason is the other way; that in the absence of a request by defendant that he be sentenced 'he must be held to have consented to the indefinite delay, and cannot complain,' and the court retains jurisdiction until sentence is pronounced."

In Ellerbrake v. United States, 7 Cir., 134 F. 2d 683, the Circuit Court of Appeals adhered to the decision of Miller v. Aderhold, supra, as shown by the syllabus wherein it is stated:

"Where defendant was not sentenced at term at which he pleaded guilty, the court had not lost jurisdiction to impose sentence at next succeeding term, since jurisdiction of trial court is not exhausted until sentence is pronounced."

The case of State v. Sapp, supra, relied upon by the defendant, was discussed in the later Kansas case of City of Lawrence v. Kagi, 105 Kan. 520, 185 P. 60, 61, where the court distinguished those cases where the trial court by its affirmative act indefinitely suspended the pronouncement of judgment from those cases where the record disclosed that a motion for new trial was pending, or that it was evident that the court at some time had the intention of pronouncing judgment in accordance with the verdict; it was therein stated:

"Defendant appears to rely on State ex rel. v. Sapp, 87 Kan. 740, 125 P. 78, 42 L. R. A., N. S., 249, where the court indefinitely suspended the rendition of judgment as a disciplinary measure and with the understanding that judgment might or might not be subsequently rendered, depending on the good behavior of the defendant. This was held to be beyond the power of the court. In holding this it was declared that the court has practical-

ly unlimited discretion in the postponement of judgment so long as the rendition at some time remains in contemplation. It is true that the motion for a new trial was not determined and judgment rendered until the term succeeding the one in which the verdict was returned, but the passing of the term did not impair the power of the court to render judgment at a later term. In effect that was said in State ex rel. v. Sapp, supra, so much relied on by the defendant. While holding that an indefinite suspension of a judgment for disciplinary purposes was beyond the power of the court, it was further said:

" 'Whether a postponement is rightful depends, not upon its length or definiteness, nor upon whether it extends beyond the term, but upon its purpose and character.' "

The above opinion is one of the strongest authorities supporting the judgment of Judge Hunt. Oklahoma does not adhere strictly to the general rule hereinabove cited. It has been held in many cases that if the court's purpose in postponing imposition of sentence is incident to administration of justice, the court's jurisdiction to impose sentence is not lost even though the term in which the verdict or plea of guilty was entered has passed. But, in many of the same Oklahoma decisions the minority rule adopted in a few states has been followed in which it was held that where the trial court allowed several terms of court to pass and made no order fixing a definite date for pronouncing sentence, but indefinitely delayed the pronouncement for an unreasonable time, the trial court thereby lost jurisdiction to pronounce the judgement and sentence. Collins v. State, 24 Okla. Cr. 117, 217 P. 896; White v. State, 45 Okla. Cr. 289, 283 P. 581; Ex parte Coley, 67 Okla. Cr. 482, 94 P. 2d 968; Willard v. State, 67 Okla. Cr. 192, 94 P. 2d 13; Ex parte Hawkins, 70 Okla. Cr. 426, 106 P. 2d 1112; In re Booth, 74 Okla. Cr. 406, 126 P. 2d 751.

We still adhere to the rule set forth in the Oklahoma cases hereinabove cited, but we do not intend to extend the rule to those cases where a motion for new trial is pending or where it may be said from the record that the defendant by his conduct has waived his right to have the speedy imposition of the judgment and sentence.

In all of the above Oklahoma cases with the lone exception of Collins v. State, there was no motion for new trial or any other matter pending which would prevent the pronouncement of the judgment and sentence, and the case of Collins v. State was considered and later overruled by this court in the cases of Stone v. State, 55 Okla. Cr. 209, 27 P. 2d 1057; and Barrett v. State, 39 Okla. Cr. 50, 263 P. 166. The case of People v. Barrett, supra, cited and relied upon by the defendant, was considered by the Supreme Court of Illinois in the later case of People v. Pilewski, 295 Ill. 58, 128 N. E. 801, in which case the Supreme Court of Illinois held that where a motion for new trial was filed and pending that the trial court retained jurisdiction to pronounce sentence during the pendency of said motion. To the same effect see the case of Beaird v. State, supra; and Davis v. Commonwealth, 230 Ky. 589, 20 S. W. 2d 455.

In Ex parte Zwillman, 3 Cir., 38 F. 2d 76, it is stated:

"State court could impose sentence after statutory period, delay resulting because court was considering Matters urged on defendant's rule (P. L. N. J. 1928, p. 407, § 1 [N. J. S. A. 2:190-15, 16], amending 2 Comp, St. 1910, p. 1838, § 55; P. L. N. J. 1928, p. 408, § 1 [N. J. S. A. 2:192-1])."

There is no fixed inflexible rule by which it may be said that any definite period of time amounts to an unusual delay in the pronouncement of sentence so as to de-

prive the court of jurisdiction. As to whether the court lost jurisdiction to pronounce the sentence by reason of an unusual delay by indefinitely postponing the pronouncement of sentence, will be determined by examination of the facts in each particular case. As above noted, we have no provision of the code controlling such question, but the cases supporting defendant's view depend for their conclusion upon the broad ground that public policy will not permit a court which is without the power to pardon an accused or suspend a sentence to indefinitely postpone the pronouncement of sentence, because that would be tantamount to suspending the sentence and the trial court should not be allowed to do indirectly that which it could not do directly. However, the question as to whether the court lost jurisdiction to pronounce the sentence by indefinitely postponing the imposition of sentence is not presented in this case for the reason that the court had not yet reached the point in the progress of the case where the court had the authority to pronounce sentence. A motion for new trial had been filed by counsel for defendant. Before the court could pronounce sentence, it had to dispose of the motion interposed by defendant. By the motion, the defendant complained of error in the proceedings which he claimed entitled him to a new trial. Defendant filed the motion. He had the burden of sustaining his motion. If the court had sustained his motion for new trial, even as late as September 21, 1945, no complaint would have been made by the defendant. If the court had overruled the motion for new trial at the time it was filed, or at any time subsequent thereto, there would have been nothing left but the pronouncement of the judgment and sentence. Under such a situation, the rule of law contended for in the dissenting opinion and the line of authorities set forth to sustain such rule would have been applicable.

Attention is directed to the fact that the dissenting opinion is based upon an incorrect assumption arising from a statement in defendant's brief to the effect that "on February 13, 1932, the defendant appeared in said District Court of Oklahoma County for sentence or whatever order the court might make in said cause, but no action was taken by the court on said motion for new trial and no order was made continuing said cause to any future date." This incorrect statement in defendant's brief was called to our attention in the answer brief of the Attorney General wherein such statement is shown as being contrary to the record on that point. The defendant never contended before Judge Hunt in the hearing had before him on the plea to the jurisdiction of the court and made no statement which appears at any place in the record indicating that he or his counsel appeared before Judge Clark on February 13, 1932. If defendant had contended that the record was incorrect and that he had actually appeared on that date in accordance with Judge Clark's order, he should have offered proof in the hearing before Judge Hunt on that point because it is well settled that where the court at the beginning of the case has jurisdiction of the subject matter and person of the defendant, there is a presumption of law that such jurisdiction continues, and the burden is on the defendant to show that the court had lost jurisdiction to pronounce judgment and sentence. Stuckey v. State, 47 Okla. Cr. 423, 288 P. 394; Coleman v. State, 6 Okla. Cr. 252, 272, 118 P. 594; Stark v. State, 10 Okla. Cr. 177, 135 P. 441; Hess v. State, 9 Okla. Cr. 516, 132 P. 505.

This court will take notice of the fact that this trial was had before the Honorable George W. Clark, who had a long and honorable service as district judge in Oklahoma county, and that it was tried during the period of

illness of the said Judge Clark, which culminated in his death a few months later. The court is not advised as to what facts were in existence which caused the delay in the passing upon the motion for new trial, as no evidence was offered upon that point by counsel for the defendant, nor the present county attorney who apparently had no personal knowledge as to what did actually occur. However, it is shown by the record that defendant's counsel filed a motion for new trial on February 12, 1932; that he did not appear at any time thereafter until the said case was set at the request of the present county attorney for disposition. The defendant and his counsel knew that he had been found guilty by a jury and that unless they procured a new trial, the verdict of the jury would be carried into execution. The learned trial judge, Clark, did not hear the motion for new trial, did not pass upon it, and made no orders in connection with it at all. After his death, it is readily conceivable that his successors in the office of district judge, and the successors of the county attorney who prosecuted the defendant, did not know the status of the case of the defendant until it was discovered by the present county attorney when checking the record to determine whether the defendant had any prior convictions in connection with an investigation of an altercation had in the place of business of defendant in the summer of 1945.

Our view is sustained by the case of Stone v. State, supra. In the syllabus of the case it is stated:

"When there is jurisdiction of a party and of an offense for which he was tried, the decision of all of the questions arising in the case is an exercise of that jurisdiction.

"The trial court has a right to delay the pronouncement of judgment for the purpose of hearing and deter-

mining motions for a new trial, or in arrest of judgment or for other proper causes."

In the body of the opinion it is stated:

"In the case at bar, the trial court obtained jurisdiction of the subject-matter of the offense by the return of the indictment into open court charging defendant with the larceny of an automobile, a charge the district court of Oklahoma county had jurisdiction to try. The trial court obtained jurisdiction of the person of defendant by bringing him into court on a warrant of arrest issued upon said indictment. He was thereafter arraigned and pleaded to the indictment, so that, if the court had no jurisdiction to pronounce judgment and sentence in the case, it was not because it had never obtained jurisdiction of the subject-matter of the offense nor jurisdiction of the person of defendant, but only upon the ground that the court had lost jurisdiction by reason of its failure to act upon the motion for a new trial at the term of court at which the verdict was rendered.

"Section 3135, Okla. Stat. 1931 [22 O. S. 1941 § 971], in part provides:

" 'He (defendant) may show for cause against the judgment: * * * Second. That he has good cause to offer, either in arrest of judgment, or for a new trial, in which case the court may, in its discretion, order the judgment to be deferred, and proceed to decide upon the motion in arrest of judgment, or for a new trial.'

"Under this section, defendant has a right to show cause against the pronouncement of judgment on the verdict of guilty by motion either in arrest of judgment or for a new trial, and, if he does so, it is discretionary with the court to defer the pronouncement of judgment and proceed to decide upon the motion either in arrest of judgment or for a new trial, or both. The defendant, by filing such motion, relieves the court of the responsibility to proceed with the pronouncement of judgment, and places it within the discretion of the court to defer action to another term of court.

"Defendant having been enlarged upon bail, he was required to be in attendance upon the court from term to term. He had a right to demand that his motion for a new trial be passed upon by the court, but, having acquiesced in the delay caused by the filing of his motions, and the hearings thereon, he is not in a position to take advantage of his own dilatory tactics and escape punishment thereby.

"In Stuckey v. State, supra, this court said:

" 'In the absence of a statute to the contrary, judgment need not be pronounced at the same term of court at which the verdict or plea of guilty was had.'

"It follows, therefore, that the mere fact that judgment in this case was not pronounced at the term of court at which the verdict of guilty was returned did not deprive or divest the trial court of jurisdiction to pronounce judgment. The action on the motion for a new trial and in arrest of judgment involved decision of a question or questions arising during the progress of the trial of the case, and in deciding such questions the court was but exercising jurisdiction in the case.

"In Stuckey v. State, supra, this court said:

" 'Where the court fixes a definite time for pronouncing judgment and sentence, and where the record shows that judgment and sentence was not pronounced on the day fixed but is silent as to what was done, the presumption of law is that a sufficient cause appeared to the court why judgment was not pronounced at that time.' "

In Barrett v. State, 39 Okla. Cr. 50, 263 P. 166, a similar contention was presented on behalf of defendant. In disposing of that question, this court adhered to the rule set forth in Collins v. State, 24 Okla. Cr. 117, 217 P. 896, which is the principal case cited and relied upon by the defendant to the effect that where the court indefinitely postpones the pronouncement of sentence for a long period of time, it loses jurisdiction to pronounce

judgment. But in said opinion the court distinguished the facts in the Collins case and the other cases which have since followed that rule from those cases where a motion for a new trial was filed by counsel for defendant seeking affirmative relief from the court and which motion must necessarily be determined before sentence could be pronounced.

In the case of Butts v. Commonwealth, 145 Va. 800, 133 S. E. 764, the Supreme Court of Appeals of Virginia held that the constitutional guaranty of one accused of crime to a speedy trial required the sentence of one found guilty without unnecessary delay, but they further held that where the trial court delayed the final judgment for thirty-three months after the verdict during which time motion for new trial was pending, that the defendant had the duty to demand that his motion be determined and sentence be pronounced or he is deemed to have waived his constitutional right to a speedy determination of the matter.

The case of In re Booth, supra, is the latest expression of this court which in any way pertains to the question here involved. In that case the petitioner, Booth, had been found guilty by a district court jury and the trial court set November 16, 1937, as the date for pronouncing judgment and sentence. Various postponements of the pronouncement of judgment and sentence were made until June 21, 1938, on which date the defendant failed to appear. No further time was then fixed for the pronouncement of judgment and sentence. The defendant several months later was brought into court and was sentenced on November 21, 1939, over two years after the verdict was pronounced.

In the body of the opinion, this court in denying the contention of the petitioner that the trial court had lost jurisdiction, stated [74 Okla. Cr. 406, 126 P. 2d 752]:

"It is the contention of petitioner that the court lost jurisdiction to pronounce judgment and sentence by reason of the failure of the court to pronounce judgment and sentence on June 21, 1938, or to continue the pronouncement of the judgment and sentence at that time to a definite date.

"With this contention we cannot agree. It is doubtful if the court could have made an order postponing the pronouncement of the judgment and sentence to a definite date without the defendant being personally present, as this was a felony case. On that date the court did all that it was authorized to do under the facts. The defendant failed to appear for sentencing and a bench warrant was issued. It is well settled that the court may postpone the imposition of sentence as an incident to the administration of justice within its conceded powers, even after the term at which the conviction is had. Ex parte Coley, 67 Okla. Cr. 482, 94 P. 2d 968.

"To sustain petitioner's contention would place it within the power of every person convicted of crime to absent himself on the date that sentence is to be pronounced and thus, through the fault of the accused, cause the court to lose jurisdiction to pronounce the sentence. This position is untenable. The authorities cited by petitioner in support of his contention are all cases where the delays in pronouncing sentence were through no fault of the accused."

In view of the fact that the record fails to disclose the appearance of either defendant or his counsel on the date set for the pronouncement of judgment and sentence, the above case is almost parallel to the facts and being the latest expression of our court on the matter is entitled to great weight.

Prior to 1937, courts of record in Oklahoma had no authority to suspend the sentence of an adult. Since 1937, there has been a statute authorizing such suspension of sentence, 22 O.S. 1941 §§ 991, 992.

In Collins v. State and the cases from other jurisdictions cited in said opinion, the appellate courts took the view that trial courts in indefinitely postponing the pronouncement of sentence, were attempting indirectly to suspend the execution of the judgment and sentence which they were not authorized to do directly by the statutes or the Constitution of the respective states, including the State of Oklahoma at that time. In said opinions, the vice of allowing a trial court to do indirectly that which it was not authorized to do directly was emphasized. Such reasoning would not now be applicable to the State of Oklahoma, since a trial court, if he so desires, may suspend the execution of the sentence, and it is not necessary for him to indefinitely postpone the pronouncement of sentence in order to effect a suspension of sentence. He does not have to resort to a subterfuge to accomplish this purpose.

The authorities cited by the defendant and adopted in the dissent are the following: People v. Reilly, 53 Mich. 260, 18 N.W. 849; People v. Barrett, supra; Collins v. State, supra; White v. State, supra; Ex parte Coley, supra; and Mintie v. Biddle, supra.

With the lone exception of Collins v. State, supra, all of the other Oklahoma cases cited in the dissent are not in point for the reason that they arose in cases where pleas of guilty had been entered and the trial court by his affirmative act indefinitely postponed for an unreasonable time the pronouncement of judgment and sentence.

In People v. Barrett, supra, and People v. Reilly, supra, the trial court in each instance released the defendant on his own recognizance, and indefinitely postponed his sentence and each of those respective appellate courts stated that these affirmative acts on the part of the trial court constituted a suspension of a sentence and since the trial courts were not authorized to suspend sentences, they were attempting to do indirectly that which they were prohibited from doing directly. The case of Collins v. State, supra, was specifically overruled in the later Oklahoma cases we have hereinabove cited. We think the reasoning of Judge Chappell in Stone v. State, supra, and the other opinions hereinabove cited which he wrote and which were handed down by unanimous court, have better reasoning and stand on a more solid foundation than the reasoning set forth in the dissent.

As hereinabove noted, the case of Mintie v. Biddle, supra, by the Circuit Court of Appeals, was criticized by the U. S. Supreme Court in Miller v. Aderhold, supra, in which they stated that they could find no convincing reason for the conclusion reached by the Circuit Court of Appeals. We choose to follow the U. S. Supreme Court, our Tenth Circuit Court of Appeals, and the other decisions herein cited as a basis for our opinion rather than the opinion of the Eighth Circuit Court of Appeals, even though the writer of the dissent by his own admission states "it is beyond" him.

It appears that in disposing of the question here presented, the reasoning of this court in passing upon questions raised in connection with the alleged failure to grant the accused in criminal cases a speedy trial in accordance with the statute, 22 O. S. 1941 § 812, and the Constitution, art. 2, § 20, should be applicable. By the terms of the Constitution, the accused in every criminal

case is guaranteed the right to a speedy trial. By statute it is provided that the defendant shall be brought to trial at the next term of court in which the indictment or information is triable after it is filed, unless good cause to the contrary be shown. This court in construing the Constitution and statute above mentioned has held that a defendant has the burden of showing that delay in affording him a speedy trial was due to laches on the part of the state. Ex parte Wilkerson, 73 Okla. Cr. 32, 117 P. 2d 172, Certiorari denied Wilkerson v. Barefoot, 314 U. S. 697, 62 S. Ct. 480, 86 L. Ed. 557; Ex parte Meadows, 71 Okla. Cr. 353, 112 P. 2d 419. This court has further held that before a defendant may have his case dismissed under the statute above mentioned for failure to try him at the next term of court after the information is filed, if at liberty on bail, he must appear and affirmatively demand a trial and have the same refused. Davidson v. State, 82 Okla. Cr. 402, 171 P. 2d 640, 645, wherein it is held:

"Where defendant is on bail, the presumption is that a delay in the trial is caused by or with the consent of defendant, and the record must affirmatively show that he demanded trial or resisted continuance of the case. However, if defendant is not on bail, the law makes the demand for trial for him and the prosecution has the burden of showing that the trial was delayed for some lawful cause."

In Burns v. State, 52 Okla. Cr. 234, 4 P. 2d 115; Stearns v. State, 45 Okla. Cr. 438, 283 P. 1028; State v. McGhee, 50 Okla. Cr. 393, 298 P. 896, this court held a defendant seeking dismissal of a prosecution because not given speedy trial, if on bail, must show he demanded trial and resisted continuance from term to term, and in Seitsinger v. State, 50 Okla. Cr. 299, 297 P. 312, it is held that in absence of a proper record affirmatively

showing to the contrary, the presumption exists that the trial court continued a criminal case for lawful cause.

In this connection, as emphasized by Judge Hunt in passing upon the objection to the jurisdiction of the court in the instant case, it is shown that the defendant throughout all of the time was at liberty on bond.

We cannot conclude under the state of the record that the responsibility for the delay should be placed solely upon the trial court. In the first place, the delay originated with the defendant by the filing of the motion for the new trial. The court should have set the same for a hearing within a reasonable time. When, however, the defendant saw that because of inability of the trial court to act, or for some reason objectionable to the defendant, the hearing on the motion for new trial was delayed, the defendant had the duty to make a demand that the motion for new trial be set for hearing. In case of such a demand, then the responsibility for further delay would be squarely up to the court. If no such demand is made for a hearing, the most that can be said in behalf of defendant is that the responsibility for further delay is a divided one due to the court's inaction and the defendant's acquiescence. Had the motion for a new trial been overruled, then the responsibilty for pronouncement of judgment and sentence, and the delays incident thereto would have been single and alone that of the trial court. The duty for action would become that of the court alone when the motion for new trial, the instrument of obstacle motivated by defendant himself, had been overruled, and when all that remained to be done was the pronouncement of judgment and sentence by the court. Certainly, as was said in the cases hereinabove quoted, where the defendant was at liberty on bail, he is deemed to have acquiesced in any delay in the speedy disposition of his mo-

tion for a new trial. To so hold will guarantee the rights of defendant without violence to the rights of the state. It provides justice for the defendant and does not open the door to the possibility of fraud and collusion to permit a convicted person to go at large without paying the penalty for his crime. The defendant by his acquiescence in the long delay in passing upon his motion, no doubt silently hoped that he would never have to account for his misdeed, but justice though long delayed should be meted out to him by requiring him to serve the penalty provided as punishment for his misdeed.

The judgment and sentence of the district court of Oklahoma county is affirmed.

BRETT, J., concurs.

BAREFOOT, P. J. (dissenting). I find that I am unable to concur in the majority opinion rendered in this case, and as I consider the question involved constitutes a fundamental proposition of law, I am expressing my dissent, and giving my view of the law applicable to the question involved, as I see it.

On November 7, 1931, the county attorney of Oklahoma county filed an information against the defendant J. G. Boykin, charging him with "assault with a dangerous weapon." Defendant was tried in district court of Oklahoma county before Judge George W. Clark, now deceased, and on January 26, 1932, was convicted by a jury and his punishment fixed at one year and one day in the State Penitentiary. Date for sentence was set for February 13, 1932, at 9 o'clock a. m., and an order was made releasing defendant on bond pending the hearing of his motion for a new trial. Defendant in his brief states that he appeared before the court on that date for sentence, or whatever order the court might make in the

cause, or for the purpose of presenting the motion for new trial. The record does not show whether defendant appeared at that time, or did not appear. From the record as a whole, I am of the opinion that it may be inferred that he did appear, as well as to infer that he did not appear. However, this technical inference should not be made the basis of this decision, where fundamental rights of the defendant are involved.

Nothing further appears in the record until July 19, 1945, when the present county attorney of Oklahoma county had the motion for new trial set down for hearing. The defendant appeared in court at that time with his counsel and objected to the court passing on defendant's motion for new trial, for the reason that the court had lost jurisdiction to pass on such motion, by not having a hearing thereon for a period of thirteen years and five months.

On July 27, 1945, Judge Albert C. Hunt, district judge of Oklahoma county, who had become district judge long after the conviction of defendant, overruled defendant's objection to the jurisdiction of the court; on July 28, 1945, overruled the motion for new trial, and on October 5, 1945, defendant was sentenced and judgment rendered in accordance with the verdict ordering defendant to the State Penitentiary for one year and one day. From this judgment and sentence the appeal was perfected to this court.

In defendant's brief, assignment of error is as follows:

"The trial court erred in overruling the defendant's plea to the jurisdiction of said court and in attempting to render judgment and impose sentence in accordance with the verdict of the jury returned in said cause for the reason that more than thirteen years and five months have

passed since said verdict of guilty was returned into court without the imposition of sentence thereon, there being no order entered postponing the pronouncement of said judgment and sentence."

Able briefs were filed by both the defendant and the state.

Defendant cites and quotes from the following cases: Ex parte Coley, 67 Okla. Cr. 482, 94 P. 2d 968; Collins v. State, 24 Okla. Cr. 117, 217 P. 896; White v. State, 45 Okla. Cr. 289, 283 P. 581; Willard v. State, 67 Okla. Cr. 192, 94 P. 2d 13; Ex parte Clendining, 1 Okla. Cr. 227, 97 P. 650, 19 L. R. A., N. S., 1041; Ex parte Eley, 9 Okla. Cr. 76, 130 P. 821; Ex parte Wilkerson, 38 Okla. Cr. 86, 258 P. 1069; and cases from other states: Mintie v. Biddle, 8 Cir., 15 F. 2d 931; Grundel et al. v. People, 33 Colo. 191, 79 P. 1022, 108 Am. St. Rep. 75; State v. Sapp, 87 Kan. 740, 125 P. 78, 42 L. R. A., N. S., 249; In re Flint, 25 Utah 338, 71 P. 531, 95 Am. St. Rep. 853; Ex parte Peterson, 19 Idaho, 433, 113 P. 729, 33 L. R. A., N. S., 1067; In re Crow, 19 N. W. 713; Posvar v. McPherson, 36 Wyo. 159, 253 P. 667; Corporate Authorities of Scottsboro v. Johnston, 121 Ala. 397, 25 So. 809; In re Strickler, 51 Kan. 700, 33 P. 620; In re Jennings, C. C., 118 F. 479 (Missouri case); White, Warden, v. Pearlman, 10 Cir., 42 F. 2d 788; Ex parte Bugg, 163 Mo. 44, 145 S. W. 831; and 22 O. S. 1941 §§ 961, 962, 963.

The state cites the following cases: Barrett v. State, 39 Okla. Cr. 50, 263 P. 166; Stone v. State, 55 Okla. Cr. 209, 27 P. 2d 1057; Miller v. Aderhold, Warden, 288 U. S. 206, 53 S. Ct. 325, 77 L. Ed. 702; Ex parte Zwillman, 3 Cir., 48 F. 2d 76; Dilley v. Commonwealth, 243 Ky. 464, 48 S. W. 2d 1070; Davis v. Commonwealth, 230 Ky. 589, 20 S. W. 2d 455.

The facts in the case of Barrett v. State, supra, and the case here before the court are quite different. In that case a motion for new trial was pending from a conviction had on February 1, 1923. On September 1, 1925, a supplemental motion for new trial was filed, and on the same day was overruled, and sentence was entered on September 2nd. In that case the court refers to the Collins case, supra, and the statement made in that case that the court may pronounce judgment at a subsequent term of the court if the judgment is "incident to the administration of justice within its conceded powers." [39 Okla. Cr. 50, 263 P. 167] The court then announced:

"We will not presume error, but will presume that it was continued for a proper purpose in the administration of justice." The court does not cite or review the authories, as was done in the Oklahoma cases above cited. It states that five years had elapsed in the Collins case, and in that case the judgment and sentence was entered on the day following the filing of the supplemental motion for a new trial. No reference is made to that part of the Collins case in which it is stated: "It cannot indefinitely suspend pronouncing judgment and sentence." The question of "reasonable" time was not considered. There can be no doubt, from the expression of the court that "almost five years elapsed" in the Collins case, that if even if that length of time had elapsed in that case it would have been held as an unreasonable time, and not an act "in the administration of justice."

The facts in the case of Stone v. State, supra, are not identical, and it seems to be based upon the case of Stuckey v. State, 47 Okla. Cr. 423, 288 P. 394. The facts in these cases and the difference in time in pronouncing judgment and sentence might be considered as coming within the rule announced in the Collins case, that judgment and sentence may be rendered at a subsequent term of the court, but they definitely would not satisfy the rule

announced in that case that the postponement must be "[an] incident to the administration of justice within its conceded powers." [24 Okla. Cr. 117, 217 P. 898] These cases were written by the same judge, and no reference is made to the Collins case and other Oklahoma cases heretofore cited.

The case of Ex parte Zwillman, supra, was an action in a federal court for writ of habeas corpus, and the writ was denied upon the ground that federal courts will follow construction of state statutes as interpreted by the courts of the respective states. The case had been decided by the Supreme Court of New Jersey. Zwillman v. State, 152 A. 775, 9 N. J. Misc. 66. The merits of petitioner's contention were not passed upon. The facts were governed by a special New Jersey statute. There was very little delay in this case.

The facts in the two Kentucky cases cited by the state are not such as to be of any value to a decision in this case, and especially in view of the decisions of our own court heretofore cited.

Miller v. Aderhold, supra, was a case in the Supreme Court of the United States, deciding an appeal in a federal case on habeas corpus. The defendant was convicted in the State of Georgia on December 10, 1930, on a plea of guilty, and sentence was suspended and he was discharged. At a subsequent term, on June 17, 1931, the defendant was by another judge sentenced to four years' imprisonment. An application for habeas corpus was denied by the Federal District Court for the Northern District of Georgia. The Circuit Court affirmed the judgment (5 Cir., 56 F. 2d 152) and the case was appealed to the Supreme Court of the United States. The question considered by the court was the power of the court to im-

pose sentence at a subsequent term. The court, after stating: "The decisions on the point are in conflict. The greatest number support the view of petitioner," reaches the conclusion that "The weight of reason is the other way." The court discusses and quotes from the case of Mintie v. Biddle, 8 Cir., 15 F. 2d 931. This case is cited and relied upon by the defendant.

I see a difference in the facts in the Miller case because there was a delay in pronouncing sentence of only from December 10, 1930, to June 17, 1931, and the rule announced in the Collins case and adhered to in the Coley and White cases, supra, clearly states that a judgment and sentence may be entered at a succeeding term yet the court "cannot indefinitely suspend pronouncing judgment and sentence." The Supreme Court in affirming the judgment in the Miller case [288 U. S. 206, 53 S. Ct. 326] bases the decision upon the proposition that the defendant could have ended the delay by "requesting the court to pronounce judgment, which the court no doubt would do unless good cause to the contrary were made to appear. In the absence of such request he must be held to have consented to the indefinite delay, and cannot complain."

This argument does not appeal to the writer of this dissent, when viewed with the facts in the instant case, and in view of the decisions in the cases from this court hereinbefore cited. It does not consider the question of the injustice which may be done a defendant by the delay. Of course, there was no such unreasonable delay in that case as in the instant case. If there had been a delay of thirteen years and five months, as in the instant case, and the court had considered the "reasonable time" and the administration of justice, the decision, in my opinion, would have been different.

For a period of thirteen years and five months no step was taken by the officers of Oklahoma county to dispose of defendant's case. Was there not some affirmative duty imposed upon them to examine their court dockets during this extended time and dispose of this case? Did the defendant not have the right to presume that there had been an abandonment of this case, and that there was no intention on the part of the officers of Oklahoma county to again revive it? Is it a fair and impartial administration of justice to wait for thirteen years and five months, and then when something happens which causes an officer to search the records and place a case like this on the docket which for such a length of time had remained dormant? If the motion for new trial had been sustained when it was finally called up, the witnesses of defendant may well have left the state or have been dead, and not subject to the process of the court. The same applies to the witnesses for the state. The further argument and reason for not permitting such delay in pronouncing judgment and sentence is that to do so would place in the courts the pardoning power, which, under the Constitution, is reposed in the Governor, and not in the courts. This question will be discussed further in the latter part of this opinion.

The facts in the case of People v. Barrett, 202 Ill. 287, 67 N. E. 23, 24, 63 L. R. A. 82, 95 Am. St. Rep. 230, cited and quoted from by Judge Doyle in the case of Willard v. State, supra, are almost identical with the facts in the instant case; and, in my opinion, the logic and reasoning used therein are unanswerable.

There, the petitioner applied for a writ of habeas corpus. Here, it was a direct appeal from the judgment and sentence. He was indicted in Cook County, Illinois, in 1898. He was tried and found guilty of grand larceny

April 12, 1900. He immediately filed a motion for new trial (just as in the instant case). Not being able to make bond, he was remanded to the custody of the sheriff. On May 5, 1900, the motion for new trial was continued (just as in the instant case) and he was released on his own recognizance in the sum of $500, without sureties (here he executed a bond with sureties), for his appearance before the Criminal Court of Cook County on May 7, 1900, "and from day to day and from term to term" until the final order of the court, or until released from custody. He was thus released while the motion for new trial was pending (just as in the instant case) and no further action was taken until October 31, 1902, two years and five months from his release, when the same judge and court before whom he was tried and convicted overruled his motion for new trial. He then filed a motion in arrest of judgment, contending that the court lost jurisdiction by reason of the lapse of time, and on November 11, 1902, his motion was overruled and he was sentenced and entered the penitentiary. He immediately filed a petition for habeas corpus, as above stated.

No state of facts could be more in point with the facts in the instant case. The court did not hold, as does the majority opinion in the instant case, that the defendant had the duty of calling up the motion for new trial and that he was the cause of the delay by the filing of the motion for a new trial; but the unanimous opinion of the Supreme Court of Illinois was that the court and prosecuting officers of Cook county had a duty and responsibility to perform, and that it was their duty as judge and officers to see that there was no unusual and indefinite delay in the pronouncement of judgment and sentence after the trial and conviction; and that the pending of a motion for new trial (as in the instant case)

was no reason for delay on the part of the court, and that a delay of two years and five months was an unreasonable and unwarranted delay, and such delay was in no way a compliance with the rule announced in all of the cases, that the delay may be granted in the pronouncement of judgment and sentence as "an incident to the administration of justice within its conceded powers," for a reasonable time, but that the court can not and should not delay the pronouncement of judgment and sentence so that it interferes with "the administration of justice."

In the Barrett case, supra, there was a delay of two years and five months. In the case at bar, the delay was thirteen years and five—almost six—months.

Listen to the quotations of the Supreme Court of Illinois from other state courts, as reasons for its holding: Quoting from People v. Blackburn, 6 Utah, 347, 23 P. 759, 760:

"It is the duty of the court (not the defendant) to keep the control of the case, and within a reasonable time to proceed to give judgment, and in doing so to exercise such discretion as the statute governing the particular offense commits to the court."

And from Weaver v. People, 33 Mich. 296:

"The failure to take steps during the October term 1874 was a practical abandonment of the prosecution, and corroborates the opinion that such must have been understood as the object of the suspension, and, as the record stands, it is fairly to be inferred it was intentional."

The court also quotes from the case of People v. Reilly, 53 Mich. 260, 18 N. W. 849, 850, in which Judge Champlin of the Supreme Court of Michigan said:

"I do not think it is competent for a circuit judge or other judicial officer to suspend indefinitely the sen-

tence which the law makes it his duty to impose upon a person duly convicted, or who may plead guilty in his court. The effect of suspending sentence operates as a quasi pardon. It relieves the offender for the time being from the punishment which the law has prescribed shall be inflicted. The pardoning power under our constitution is reposed in the governor and not in the judges. It is for the governor to say whether the criminal shall be relieved from the infliction of the penalty due to his crime. The constitution having vested this power in the governor, it cannot be exercised by the circuit judges indirectly by letting the prisoner to bail on recognizance to appear when required to receive sentence. * * *

"If such power can be exercised by a judge, it incorporates into our administration of the criminal law the 'ticket-of-leave' system of the English jurisdiction, without its surveillance and checks, and places the criminal at the caprice of the judge, subject to be called up for sentence at any time. If the judge can delay the sentence one year, I do not see why he may not fifteen years. An exercise of such power in this age would be no less revolting to our sense of justice than was the exercise of such power in the reign of James I., when he sent Sir Walter Raleigh to the block 15 years after his conviction."

In the Reilly case a little more than one year had elapsed from the time Reilly was convicted of the crime of larceny before he was sentenced.

The Supreme Court of Illinois, in the Barrett case, quotes from the case of Neal v. State, 104 Ga. 509, 30 S. E. 858, 860, 42 L. R. A. 190, 69 Am. St. Rep. 175, where the Supreme Court of Georgia said:

"The power to indefinitely postpone the punishment prescribed by the law, whether exercised by suspending the imposition or by suspending the execution of a sentence, is the power to perpetually prevent punishment,— a power which, under such provisions as are found in the constitution of this state, does not exist in the courts."

The Supreme Court of Illinois then says [202 Ill. 287, 67 N. E. 27]:

"It is true, there was in the case of the relator a *motion for a new trial pending* (just as in the instant case) which was continued to the next term; but nothing was done in the matter, (just as in the instant case) although numerous terms intervened for 29 months. We are of the opinion that this was an unreasonable and unwarrantable delay—it being entirely unexplained by anything in the record (just as it was in the case at bar)—and that the court, in view of all the circumstances * * * lost jurisdiction of the case, and that the subsequent sentence was without judicial authority."

And quoting from the case of People v. Allen, 155 Ill. 61, 39 N. E. 568, 41 L. R. A. 473:

"If such power remained in the court three years, it would continue indefinitely, and might be exercised at any future time; and that, too, without any reason for doing so, except such as might exist in the mind of the judge causing the rearrest, and pronouncing judgment * * *.

*"The state has a right to demand, and the welfare of society requires, that those who are convicted or plead guilty to violations of the law shall be promptly and certainly punished."*

In the Collins case, supra, the following quotation from the case of People v. Barrett, supra, appears [24 Okla. Cr. 117, 217 P. 898]:

"Long and unreasonable delays in passing upon motions for new trials or in arrest of judgment are calculated to obstruct the administration of public justice and to operate as a denial of the right of the citizen to a speedy trial. It is said, however, in this case, that all the delay was with the consent of the relator, and that he cannot now be heard to complain. It cannot, of course, be contended that the doctrine of estoppel has any application

here, nor can it be held that the relator could waive any requirement respecting the jurisdiction of the court to enter judgment and pronounce the sentence. If the court had no power thus indirectly to suspend sentence and to permit the relator to go at large upon his own recognizance or upon parole, *such power could not be conferred by his consent nor by his express request.* Harris v. People, 128 Ill. 585, 21 N. E. 563, 15 Am. St. Rep. 153; Morgan v. People, 136 Ill. 161, 26 N. E. 651. *The rendering of judgment and the final sentencing of the defendant cannot be made a mere matter of discretion with the judge or the public prosecutor, nor to depend upon the subsequent conduct of the convicted person.* If it were so, what subsequent conduct would demand or justify the pronouncing or the withholding of the sentence? And who would determine its character? Such conduct might be innocent in itself yet offensive to those in whom the power to apprehend or to punish resided. *The liberty of the citizen cannot, in a free country, be made to depend for its security on the arbitrary will of any public officer; it can be taken from him by due process of law only.*"

And further quoting the case of People v. Barrett, supra, the Supreme Court of Illinois said:

"The act of 1899 providing a system of parole (Hurd's Rev. St. 1901, p. 669) is the only law in this state authorizing the parole of a person convicted of crime. Provisions are made and means and instrumentalities are provided for its uniform operation and for its due administration. If the many criminal courts of the state had the power to enlarge persons convicted of crime, on their own recognizance, during their good behavior or at the discretion of the presiding judge, there would, in effect, be in full force another and different system of parole, without bounds or limitations and without uniformity, but wholly dependent in its operation in each individual case upon the discretion of the sitting judge. We are of the opinion, as we have already said, that no such power exists in the courts.

"It follows that the imprisonment and detention of the relator by virtue of the mittimus issued in pursuance of the judgment and sentence so rendered were without authority of law, and that he should be, and accordingly is, discharged therefrom. Relator discharged."

I quote from the case of Mintie v. Biddle, 8 Cir., 15 F. 2d 931, 932, cited by defendant. The logic and reasoning there is so convincing that I do not hesitate to adopt it as my reasoning in this case. There the court says:

"We have no doubt that, after a plea of guilty or after conviction of one guilty of a crime, sentence may be deferred at convenience till some day, or any day in the current term. This is so, because the court ordinarily retains jurisdiction over its judgments for the current term in all cases. Nor have we any doubt that sentence may, in furtherance of the administration of justice, be deferred to some day in the next term or even to some definite time in the second succeeding term (Ex parte United States, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355), by an order made in the case (Miner v. United States, 3 Cir., 244 F. 422, 157 C. C. A. 48, 3 A. L. R. 995; Ex parte Singer, 3 Cir., 284 F. 60). But, in the instant case, sentence was not deferred to a day certain, or to a term certain; it was in effect deferred indefinitely. For the court omitted to make an order deferring sentence. He merely said, in substance, to petitioner, that the latter should keep the district attorney advised of his whereabouts and appear for further proceedings when notified. It is true, that the case, wherein petitioner and his codefendants stood indicted, was then continued till the next term. No serious question, we think, could have been raised had sentence been pronounced at the term to which the case of defendant had thus been continued. But this was not done; no orders in the case were entered at the latter term. But, after the term to which continuance was thus had, some four terms elapsed before any other order was made of record in the case. The language of the court

connotes clearly an indefinite postponement of the imposition of sentence on petitioner. It may well be, other things being equal, that, if the case had, at the next time, been further postponed by an order of continuance, and so on, from term to term, such order, or orders of continuance would have afforded such definiteness of deferment of sentence, as to have taken from the case the illegality created and existing, by reason of the language of the court, and the lack of the existence of record of an order definitely deferring sentence. But no such situation is presented by the record, and no occasion arises to speculate about an hypothetical situation.

"So the question presented by the case is whether the trial court, by postponing the sentence of petitioner indefinitely, lost jurisdiction to lawfully impose a sentence on him at all.

"We think it did, and we *think the great weight of the ruled cases, as well as of the analogous authorities and the reason of the thing, lead to the same conclusion.* Some latitude of action of the court, referable to the furtherance of the administration of justice, of course exists. Deferring of a sentence to a day, or term certain by affirmative orders in furtherance of justice, or for the purpose of observing the behavior of a defendant, so that less punishment, if he behave, shall be inflicted than if he does not behave, is legally permissible. For the former may be and the latter is for the benefit of defendant, and to such action, *within reasonable limits,* he could not be heard to complain, for, if he did not get that, he would likely have to accept worse. Here, however, the government, for its own ends and convenience deferred sentence till such time as the district attorney might see fit to notify defendant to appear. Thirty-four months passed, and then defendant was notified to appear as a witness, and not as a defendant. Obviously, the matter of the furtherance of the administration of justice is not a unilateral one. The accused is due some modicum of consideration. *It is not alone the ends and accommodation of the government which are to be considered and subserved;* but those of the defendant as well. Held thus in suspension in-

definitely and for a period which turned out to be thirty-four months, defendant could, in the interim, *make no plans, enter into no contracts, engage in no permanent occupation, and bind himself to no obligations, or create any permanent ties, business or domestic.*"

The court then cites and quotes from the cases of United States v. Wilson, C. C., 46 F. 748; Ex parte Singer, 3 Cir., 284 F. 60; Ex parte United States, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355, and concludes:

"The great weight of authority in the state courts is in favor of the rule that (absent a statute, and there was no such federal statute when the matter complained of, in the case at bar, occurred) when sentence is indefinitely deferred by an order of court (except to an indefinite day in the current term), the court loses jurisdiction to impose a legal sentence."

The court then cites a long line of cases from the Supreme Courts of the various states, including the Collins case, supra, and Ex parte Clendining, supra.

The logic and reasoning in the Mintie v. Biddle case is, in my opinion, unanswerable. It recognizes both the rights of the state and of the defendant. Thirty-six months had passed in that case before sentence was passed. Here, thirteen years and five months had passed. It was held that the government had a duty and responsibility to perform and they failed to meet it. Can the majority opinion be upheld in the face of the argument in this case, that all of the duty and responsibility was upon the defendant, and none upon the court? The argument that "justice though long delayed should be meted out to him," as expressed in the majority opinion, should, in my opinion, have little weight when the rights of the defendant are considered in this case. It seems to me as it has to the judges of the Supreme Courts of Illinois, Michigan,

Georgia, Utah, Colorado, Kansas, Idaho, Wyoming, Alabama, Missouri, and the Eighth Circuit Court of Appeals, and others that the statement in the Mintie v. Biddle case, supra [15 F. 2d 933], is a complete answer to this when it is said:

"Obviously, the matter of the furtherance of the administration of justice is not a unilateral one. The accused is due some modicum of consideration. It is not alone the ends and accommodation of the government which are to be considered and subserved; but those of the defendant as well. Held thus in suspension indefinitely and for a period which turned out to be thirty-four months, defendant could, in the interim, make no plans, enter into no contracts, engage in no permanent occupation, and bind himself to no obligations, or create any permanent ties, business or domestic."

The majority opinion is based primarily upon the following Oklahoma cases: Stone v. State, supra, Stuckey v. State, supra, and Barrett v. State, supra. I have heretofore noted a distinction in those cases and the case at bar. We have carefully examined the cases cited in the Stuckey case, and this is the only case which cites other cases. I now desire to refer to these cases, written by Judge Chappell, a former member of this court.

In the case of Ex parte Sparks, 9 Okla. Cr. 665, 132 P. 1118, the facts were that the defendant was convicted of the crime of murder in Choctaw county, in January, 1913. An epidemic of smallpox was prevalent in Choctaw county, and the district judge, who lived in Marshall county, by agreement of counsel for the state and defendant, continued sentencing of defendant until the first day of the next term of court at Hugo, in Choctaw county. The defendant, over his objection and exception, was sentenced by the court to life imprisonment. It will be noted that this was at the next term of court. There was no

extraordinary or unreasonable delay, and nothing that would interfere with "the administration of justice within its conceded powers." The question of unreasonable delay was not presented or considered in this case, and the judgment was in conformity with the written orders of the court.

In the case of People v. Felix, 45 Cal. 163, there was no unusual delay, and it only decides that a judgment and sentence may be entered at a succeeding term. This is in no way in conflict with the holding in the Collins case. The question of unreasonable or unwarranted delay is not discussed.

In the case of Thurman v. State, 54 Ark. 120, 15 S. W. 84, the defendant escaped immediately after conviction, and before sentence was pronounced. He was later recaptured and the court held he could then be sentenced. It is obvious that this could be done.

The case of State v. Overton, 77 N. C. 485, has no application to the fact similar to those in this case.

In the case of State v. Watson, 95 Mo. 411, 8 S. W. 383, the defendant was charged with murder and convicted of manslaughter in the third degree, in 1882. He filed motion in arrest of judgment and for a new trial, which were overruled at that term, and the defendant appealed to the Supreme Court of Missouri. The case was stricken from the docket for the reason that no formal judgment and sentence had been entered in the case. At the June term, 1885, of the Circuit Court the defendant was brought before the court and sentenced in accordance with the former verdict, and this whole record was brought before the court, and the court held that by reason of the appealing of the case, the defendant had delayed the sen-

tence, and in compliance with the rule announced that a sentence could be pronounced at a subsequent term, it was not error for the court to pronounce sentence in this case. The case was reversed and remanded for other reasons.

In the case of People v. Blackburn, 6 Utah 347, 23 P. 759, the facts were that application was made to the Supreme Court of Utah for a writ of mandamus to require the district court to enter a judgment and sentence against the defendant Blackburn, who had been convicted of voluntary manslaughter on September 26, 1889. On October 10, 1889, the day defendant had been ordered to appear for sentence, the court, upon motion of defendant, for good reason shown, entered an order suspending the sentence during good behavior. There was of course no statute authorizing the suspension of sentence by the court. The Supreme Court, in refusing to issue the writ of mandamus, said:

"Ample authority is vested in the court by the statutes of the territory and rules of practice to set aside verdicts for errors or want of proof to support them; but this power was not invoked in this case, and Dodds stood convicted before the court of the crime of voluntary manslaughter by a verdict which was in full force and effect. After conviction the trial court may, undoubtedly, suspend judgment temporarily, for stated periods, from time to time. It may be proper to do so to allow the defendant time to move for a new trial, to perfect an appeal, to present a petition for pardon, and to allow the court time to consider and determine the sentence to be imposed. People v. Reilly, 53 Mich. 260, 18 N. W. 849; Whart. Crim. Pl. § 913; Commonwealth v. Dowdican's Bail, 115 Mass. 133; State v. Addy, 43 N. J. L. 113; [39 Am. Rep. 547]. But when a defendant stands convicted, and all the remedies provided by law for testing the correctness of the conviction have been exhausted or waived, *we have*

*no doubt it is the duty of the court to keep control of the
case, and within a reasonable time to proceed to give
judgment,* and in doing so to exercise such discretion as
the statute governing the particular offense commits to
the court. *The authority to wholly relieve parties from
a conviction for crime is not given to the courts, but be-
longs to the pardoning power.* People v. Reilly, 53 Mich.
260, 18 N. W. 849; People v. Brown, 54 Mich. 15, 19 N.
W. 571. It is apparent from this record that it was not
intended by the court to temporarily suspend judgment,
but, on the contrary, to entertain the prosecution no fur-
ther, and to discharge the defendant therefrom without
sentence."

The holding in this case, in my opinion, is directly
against the proposition which it is cited to sustain.

Under the facts of the case at bar, did the defendant
not have a right to assume that after a delay of thirteen
years and five months it was the intention of the court
that he should not be prosecuted further? The court be-
fore whom he was tried had long since died. He was the
only one qualified to properly pass upon the motion for
new trial. This presumption on the part of the defend-
ant would have been fully justified.

The case of People v. Manes, 104 Cal. App. 493, 285
P. 1073, has no application to the facts here presented.

From a careful review of these cases cited by Judge
Chappell to support the decision in the Stuckey case, su-
pra, it seems they were cited without reading or consid-
ering the same, and while the holding in that case is not
in absolute conflict with the previous decisions of the
Collins and White cases, it is evident that the court did
not consider the decisions of Judge Doyle and Judge Da-
venport and the cases cited by them in the Collins and
White cases.

I now wish to refer to the decisions of this court where the question here involved has been considered.

I have already referred to the cases cited in the majority opinion, and have called attention to the difference in the facts in those cases and the case at bar.

In the Collins case, supra, the facts were that the defendant was tried and convicted in the superior court of Muskogee county upon a misdemeanor charge, on January 18, 1917. The court fixed the day for sentence at January 22, 1917, and defendant was released on his bond. On that date the case was passed for sentence until January 25, 1917. Defendant filed a motion for new trial, and the same was pending. On January 27, 1917, the court was informed that the defendant Collins had been convicted in the federal court and sentenced to serve a term in the penitentiary at Leavenworth, and ordered that the proceedings against him "be stayed and continued until such time as the defendant, Matt Collins, shall be out of the custody of the United States Marshall on bond or otherwise." On March 17, 1917, the superior court of Muskogee county made an order suspending the sentence of defendant Collins until "he may come into the custody of the sheriff of this county."

Thereafter the superior court of Muskogee county was abolished by an act of the Legislature, effective March 24, 1921, § 3137, O. S. 1921. By the terms of that act it was provided:

"All criminal cases of which the county court * * * has jurisdiction, * * * which are now pending in said superior court are hereby transferred for hearing, trial and determination, or any other proceeding proper therein, to such county court with the same effect as if such causes had been originally instituted therein, and such

county court is hereby constituted the successor of such superior court as to all such causes so transferred."

On September 10, 1921, the county attorney of Muskogee county moved for judgment and sentence on the verdict of the jury returned in the superior court on January 18, 1917. The question was raised that the county court was without jurisdiction to render judgment under said verdict, for the reason the court had lost jurisdiction on account of the delay. The court refused to sustain the objection and sentenced defendant to imprisonment in the county jail for six months, and to pay a fine of $500. During all this time, the motion for a new trial had been pending in the superior court. Under the state of facts, which are identical with the facts in the instant case, Judge Doyle in rendering the opinion, after referring to the statutes in reference to the pronouncing of sentence, said [24 Okla. Cr. 117, 217 P. 897]:

"Under the foregoing provisions it is the duty of the court, on a conviction or plea of guilty, to impose sentence within a reasonable time. However, there can be no doubt that a court has the right to delay the pronouncement of judgment for the purpose of hearing and determining motions for a new trial or in arrest of judgment, or for other proper causes; but to suspend indefinitely the pronouncing of judgment and sentence after conviction is not within the power of the court." (Citing a long list of cases.)

After this statement, the court quoted from the cases from the Supreme Courts of Utah, Michigan and Illinois to which reference has already been made, and which will not be repeated.

Judge Doyle, in the Collins case, distinguishes some Oklahoma cases, and then says:

"It seems to be well settled that, in the absence of a statute to the contrary, sentence need not necessarily

be imposed at the same term of court at which the verdict or plea of guilty was had, and, if the court's purpose in postponing the imposition of sentence is incident to the administration of justice within its conceded powers, and *its orders postponing sentence are unconditional and to definite periods,* the jurisdiction of the court to impose sentence at a term after the trial term is not affected. * * *

"Upon a careful review of the record in this case, we are convinced that the trial court lost jurisdiction to pronounce judgment on the verdict returned on January 18, 1917. By the order of the trial court entered on March 17, 1919, no definite time was fixed within which sentence should be pronounced. The failure of the trial court to enter judgment at the time appointed or when the order of postponement was made, or at the succeeding term, was, we think, a practical abandonment of the prosecution, and the trial court having failed to exercise its power to pronounce judgment in the defendant's absence in term time, or during the succeeding term, or to enter proper orders postponing the time when sentence should be pronounced, lost jurisdiction to pronounce judgment on said verdict long before said court was abolished.

"It follows that the county court, as the successor of said superior court, had no authority or jurisdiction to pronounce judgment and sentence on the verdict."

How the majority opinion in the case at bar can get around this decision is beyond me. Certainly it is not an answer to state that the court took the view that the court decided the case on the ground that "the vice of allowing a trial court to do indirectly that which it was not authorized to do directly." There was a motion for new trial pending in the Collins case, just as there was in this case, and the court did not hold that by reason of this pending motion the defendant had waived any right, and that it was no less the duty of the court to pronounce the judgment and sentence within a reasonable time and that the

act of the court was not "incident to the administration of justice within its conceded powers."

In the case of White v. State, supra, the agreed statement of facts show that the defendant White was charged on June 5, 1925, with the crime of forgery in Woodward county. On September 14, 1925, he entered a plea of guilty, and was required by the court to pay the costs, pay the prosecuting witness the sum of $15, the amount of the forged check, and was then paroled without judgment and sentence and released on his own recognizance, without stating any date for further judgment and sentence. On December 17, 1927, the defendant was cited and brought before the court, and on January 2, 1928, more than two years after his plea of guilty, over his objection that the court had lost jurisdiction to sentence him was overruled, he was sentenced to three years in the Granite reformatory, and the case was appealed to this court.

It will be noted that the facts in this case are not identical with the facts in the instant case and the Collins case, as the defendant entered a plea of guilty and no motion for new trial was filed. But this court did not base its decision upon that question and cited and followed the Collins case. The court said [45 Okla. Cr. 289, 283 P. 582]:

"We hold that, in view of the length of time elapsing between the plea of guilty entered by the defendant, which was more than two years, (here it was thirteen years and five months) and the failure of the *court* to enter judgment at the time appointed or at any succeeding term and as no definite time was fixed in which the defendant should appear for sentence, *the prosecution was abandoned* and the court was without jurisdiction to pronounce the judgment and sentence."

The defendant was ordered discharged.

The reasoning in this case is certainly applicable here, and is in conformity with the decisions of the Supreme Courts of the many states I have cited.

In the case of Ex parte Coley, 67 Okla. Cr. 482, 94 P. 2d 968, the petitioner, Harry Coley, filed a petition for habeas corpus in this court, asking his release from the jail of Seminole county. The agreed statement of facts was that defendant on March 21, 1938, entered a plea of guilty in eight misdemeanor cases in the county court of Seminole county, and sentence day was set for April 4, 1938. On that date the judgment and sentence was postponed and continued by order of the court until June 2, 1939. No further order or action was taken therein until September 26, 1939, at which time judgment and sentence was pronounced and petitioner was remanded to the custody of the sheriff to serve judgment and sentence.

This court, after citing and quoting from the Collins and White cases, followed the rule there announced and granted the writ of habeas corpus and ordered the petitioner discharged. The syllabus reads:

"Sentences need not necessarily be imposed at the same term of court at which the verdict or plea of guilty was had, and, if the court's purpose in postponing the imposition of sentence is incident to the administration of justice within its conceded powers, and its orders postponing sentence are unconditional and to definite periods, the jurisdiction of the court to impose sentence at a term after the trial term is not affected. But in the case at bar several terms of court had passed and no order was entered postponing the pronouncement of judgment and sentence. The court, under the law, had lost jurisdiction."

I call attention to the fact that in this case, as in the Collins case, the court held that it was not necessary that the judgment and sentence be pronounced at the same term of court at which the conviction or plea of guilty is entered, especially if the imposition of sentence is "incident to the administration of justice within its conceded powers" and the judgment and sentence is rendered within a reasonable time.

The cases cited and relied upon by the majority opinion in this case all announce the doctrine as above stated; and I have been unable to find any case which holds that the time as in this case, of thirteen years and five months, was not an unreasonable and unwarrantable time for a court to sit and do nothing toward the entering of the judgment and sentence in compliance with the verdict of the jury. The answer that a motion for new trial was pending and that defendant could have called it up is, to me, a technical excuse that fails to consider that the court who had charge of its records had a duty and responsibility even greater than the defendant. The law is more fundamental and is for the protection of the defendant, as well as the state, in my opinion.

A statement made by Judge Albert C. Hunt at the time of overruling the motion for new trial and entering judgment and sentence has been quoted in the majority opinion. No one has more respect for Judge Hunt, and for his ability as one of the leading district judges of this state, than the writer of this dissent. I also realize that a trial judge is much more handicapped than is the appellate judge, in that it is often necessary for him to come to a hasty decision when he does not have the time or opportunity to carefully review the decisions of the various courts of the country, or even of our own courts, before making his decision for the proper dispatch

in the trial of a given case. But this is no excuse for the appellate judge where a case has been carefully briefed, and who has time for exhaustive research of all the authorities before arriving at a conclusion as to what the law is or should be. It is after this careful consideration of the cases cited, and many others examined from other states and the decisions of this court, as well as a careful examination of the record, that I have come to the conclusion that under the facts here presented this case should be reversed and remanded, and an order entered discharging the defendant. If this be not true, you have laid down the bars so that a court may exercise the pardoning power according to his own ideas and desires, whether good or bad, when this power, under our Constitution, is bestowed only on the Governor of the state, and on the recommendation of the Pardon and Parole Board.

Suppose that some person is convicted and found guilty by a jury, and a judge for some reason does not desire that he be punished. Counsel representing the defendant knows this, and he files a motion for new trial. No order is made thereon, and it lays dormant for a great number of years, as in the instant case. Is any attorney going to urge the court to take action in the matter so long as his client is free? The statement of the question is a refutation of the same. No lawyer would do that. Is there not some duty of the court and the prosecuting officers, who have charge of the docket and cases in the court, to see that within a reasonable time action is taken as the law requires, and that the sentence of the law is carried out within a reasonable time, as the law provides? In my opinion, it was never intended that the courts of this state should have this power for good or bad to delay this official duty for a time of

thirteen years, five months and twenty-three days—almost thirteen and a half years—as was done in this case.

I have to some extent quoted from some of the cases on the question of the failure of the court to pronounce judgment and sentence within a reasonable time after the conviction of a defendant, or a plea of guilty, for the reason that to do so places in the courts the pardoning power, which under the Constitution is vested in the Governor of the state, and under our Constitution acting upon the advice and recommendation of the Pardon and Parole Board.

I close this opinion with a quotation from the case of People v. Reilly, supra, where the Supreme Court of Michigan says [53 Mich. 260, 18 N. W. 850]:

"I do not think it is competent for a circuit judge or other judicial officer to suspend indefinitely the sentence which the law makes it his duty to impose upon a person duly convicted, or who may plead guilty in his court. The effect of suspending sentences operates as a quasi pardon. It relieves the offender for the time being from the punishment which the law has prescribed shall be inflicted. The pardoning power under our constitution is reposed in the governor, and not in the judges. It is for the governor to say whether the criminal shall be relieved from the infliction of the penalty due to his crime. The constitution having vested this power in the governor, it cannot be exercised by the circuit judges indirectly by letting the prisoner to bail on recognizance to appear when required to receive sentence. A stay of sentence may be granted where a certiorari is sued out, or when a writ of error is obtained for the purpose of review by the higher courts. Temporary stay may also be granted where steps are taken for a new trial; but all these are steps in the progress of the case, taken for the purpose of bringing about a change in the result."

This argument, in my opinion, cannot be answered. What does the court mean when it says: "Temporary stay may also be granted where steps are taken for a new trial?". It certainly did not mean that the postponement could be for an indefinite period, either by the court or the defendant. The due administration of justice by the courts refutes this. What was meant by the Supreme Court of Illinois when it said, in the Barrett case [202 Ill. 287, 67 N. W. 28]:

"Long and unreasonable delays in passing upon motions for new trials or in arrest of judgment are calculated to obstruct the administration of public justice"?

Certainly this statement did not mean that a defendant could sit idly by and defeat the purpose of the law by failure to press his motion for new trial.

No, these expressions placed the duty upon the court where it should be placed if law and procedure is to prevail. As stated in all the cases, it was not intended that the pardoning power of the state should be placed in the courts, instead of in the hands of the Governor, as designated by the Constitution.

I do not deem it necessary to refer to that part of the majority opinion which attempts to bolster its decision by referring to the Oklahoma statute which now gives a district judge the power to suspend sentences in this state. Suffice it to say that this statute was not enacted until long after this defendant had been convicted. Nor to the question of a speedy trial, which is in no way involved in this case.

I have extended this opinion for the reason that I consider the question involved is fundamental, and therefore desired to express my view of the law. I recognize the rule that dissenting opinions are not to be favored unless fundamental principles are involved.

Since writing the above, the majority opinion has been practically entirely rewritten. I do not desire to further lengthen this opinion, as the above states fully my views as to the fundamental principles involved in this case.

As hereinbefore stated, I am of the opinion that this case should be reversed and remanded, and an order entered discharging the defendant for the reason that the court, by delaying for a period of thirteen years and five months to pronounce judgment and sentence, had lost jurisdiction.