**Lloyd GRANT, Petitioner,**

v.

**H. C. McLEOD, Warden, Oklahoma State Penitentiary, Respondent.**

**No. A–12603.**

Criminal Court of Appeals of Oklahoma.

May 14, 1958.

**1084**

Hill & May, by James M. May, McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for respondent.

POWELL, Judge.

Lloyd Grant has filed in this court his petition for writ of habeas corpus, alleging that he is unlawfully imprisoned and detained of his liberty in the Oklahoma State Penitentiary at McAlester, by H. C. McLeod, warden thereof.

Petitioner alleges that he was charged by information in the district court of Bryan County on May 31, 1955 with larceny of an automobile, second and subsequent offense, case No. 4279; that on November 12, 1955 he appeared before the court and entered his plea of not guilty to said charge; that on November 14, 1955 he appeared before the court and withdrew his plea of not guilty of the crime charged and entered his plea of guilty, and that judgment and sentence was thereupon by the district judge "deferred to a future date".

Petitioner further asserts that on November 26, 1955, having been at liberty on bond, the said bond was dissolved by the court and the sureties thereon were discharged, and petitioner was released from constructive custody on his own recognizance. That on December 10, 1956 upon application of the county attorney of Bryan County, in which it was alleged that "Lloyd Grant has violated the law in several ways", and in which said county attorney recommended that the said deferred judgment and sentence be then pronounced, the court on said December 10, 1956, acting on said application of the county attorney, pronounced judgment and sentence upon petitioner, although one year and twenty-five days and two terms of court had elapsed since the entry of his plea of guilty. That petitioner was sentenced to serve a term of five years at hard labor in the State Penitentiary, at McAlester, and in pursuance of said judgment he was accordingly incarcerated in said penitentiary, and is presently serving said sentence.

We find attached to the petition photostat copy of the complaint filed in the justice of the peace court, together with transcript, all duly certified; certified copy of information filed in the district court of Bryan County; photostat copy of application of the county attorney of Bryan County petitioning the court to sentence petitioner, order sentencing him, judgment and sentence on plea of guilty, and certified copy of the minutes of the court entered on November 12, November 14 and November 26, 1955 and on December 10, 1956.

Counsel for petitioner in support of his petition for discharge from prison, says:

"But your petitioner states ·and alleges that said restraint is illegal and unauthorized, in that the said judgment and sentence of said district court of said Bryan County, Oklahoma, pronounced upon him on December 10, 1956 was, and is, void because of lack of jurisdiction of said court to pronounce said judgment and sentence after some twelve months, twenty-five days and two terms of court had passed from the date of entering said plea of guilty, to-wit: November 14, 1955, to the date judgment and sentence was pronounced upon him by said court, to-wit: December 10, 1956. That such excessive delay and lapse of time in pronouncing said judgment and sentence by said court was arbitrary and unreasonable and beyond the conceded powers of said court, in that, that the date of pronouncing said judgment and sentence was not postponed either upon motion of this petitioner, nor at some definite and certain date in the future, or from term to term as required by law, nor was said delay caused for, or by, any motions pending or otherwise, for a new trial and in arrest of judgment or other legal cause; that the said court was, and is, without authority to defer or suspend indefinitely and for a period of years, the pronouncing of the said judgment and sentence therein after the plea of guilty had been entered, as aforesaid, or to suspend indefinitely the execution of the said judgment and sentence, when no legal reason or cause was shown why said judgment and sentence should not be then pronounced, and when there is no motions pending, before said court, which would prevent it from pronouncing said judgment and sentence, while said motion was pending or undisposed of."

Counsel prior to filing petition in this court made application to the district court of Pittsburg County for a writ of habeas corpus, which was denied, but there has been filed herein a transcript of the evidence taken in that court on March 25, 1958.

Defendant testified under oath that the prosecuting witness was his wife, who signed the complaint in her maiden name; that he and his wife took title to the involved motor vehicle in her maiden name; that he was helping make the monthly payments; that he and his wife had a quarrel one night and that he took the Ford pickup and drove down the road a few miles and slept in the car, waiting for tempers to cool off; that his wife had filed the charge when he next saw her and thereafter tried to get the county attorney to drop the case, but that he refused. Petitioner swore that at no time was he represented by counsel. Most of this evidence is supported by the records presented, and the minutes of the court.

Concerning the sentencing, petitioner testified:

"Well, the morning of the 8th of November, I went into the county attorney's office and asked him if he was going to go ahead and go through with the trial, and he said he was. And he said, 'I will give you a suspended sentence'; and I told him I couldn't get a suspended sentence, so ·he said, 'let's go in and talk to the judge.' So we went in and talked to district judge Sam Sullivan. The Judge told the county attorney, said, 'I told you there was nothing to this to start with'; but, he said, 'I can't give him a suspended sentence, but I will defer it'. So he asked me if that would be all right, and I told him it would, and be said, 'Well, do you want to plead guilty?' And I told him, I said, 'Judge I can't plead guilty to stealing the pick-up.' I said, 'I will plead guilty to what I done, I drove it off, I did do that, I will plead guilty to that.' He said, 'Well, we will just defer it. You go on, stay out of trouble, there won't be any more to it.' And that was all. I just walked out, and that was the end of it."

H. C. McLeod, Warden of the Oklahoma State Penitentiary, has filed response in the nature of a general denial, attached to which we also find certified copies of the instruments filed in case No. 4279, State v. Grant, in the district court of Bryan County. It is prayed that the petition be denied.

At time of oral argument in this court, counsel for petitioner cited the following cases as supporting his thesis that the district court of Bryan County lost jurisdiction to sentence the petitioner: Ex parte Coley, 67 Okl.Cr. 482, 94 P.2d 968; Norman v. State, 73 Okl.Cr. 295, 120 P.2d 369; Willard v. State, 67 Okl.Cr. 192, 94 P.2d 13; Ex parte Hawkins, 70 Okl.Cr. 426, 106 P.2d 1112; Hall v. State, Okl.Cr., 306 P.2d 361. These cases should be read for development of the rules that they force.

In connection with the above cases, we have read other cases from this court bearing on the question before us, and being: Ex parte Eldridge, 3 Okl.Cr. 499, 106 P. 980, 27 L.R.A.,N.S., 625; Collins v. State, 24 Okl.Cr. 117, 217 P. 896; Barrett v. State, 39 Okl.Cr. 50, 263 P. 166; White v. State, 45 Okl.Cr. 289, 283 P. 581; Stone v. State, 55 Okl.Cr. 209, 27 P.2d 1057. We have also given attention to the question of indefinite suspension of pronouncing sentence as set forth in 24 C.J.S. Criminal Law § 1571; and in 15 Am.Jur., Cr.Law, § 486.

The Attorney General has cited two cases from this court which he asserts are decisive of the issue: Boykin v. State, 86 Okl.Cr. 175, 190 P.2d 471; and Ex parte Faulkenberry, 95 Okl.Cr. 259, 244 P.2d 324, 327.

We have carefully read all of the above cases. The two cases cited by the Attorney General are by reason of the facts in those cases distinguishable from the within case.

In the Boykin case, the defendant was represented by counsel, and the delay in sentencing was charged to an affirmative act of defendant and counsel in filing a motion for new trial, necessary to be passed upon before pronouncement of sentence.

In the Faulkenberry case, the defendant was likewise represented by counsel. There were four persons jointly charged. And while there was a long delay between the date that defendant changed his plea from not guilty to guilty, and the date of sentence, it is evident that the delay in imposing sentence had some connection with the co-defendants and it is apparent that the county attorney had promised to recommend that the sentence be suspended, which was done. Faulkenberry's bondsmen had not been discharged, and there was no evidence that the sentencing had actually been postponed indefinitely; that is, "deferred to a future date", or, "deferred as long as you stay out of trouble". After several months Faulkenberry got into other trouble and his suspended sentence was revoked, and new counsel for the first time raised the question of the jurisdiction of the court, in the first instance, to have sentenced defendant to three years confinement in the penitentiary, with sentence suspended, after he had entered his plea of guilty over a year prior thereto. This court held:

"Where court fixes definite time for pronouncing judgment and sentence, but record shows that judgment and sentence was not pronounced on day set, and is silent as to what was done, presumption exists that sufficient cause appeared to the court for not pronouncing judgment at that time."

The Faulkenberry case cites the Boykin case as authority for denial of the writ of habeas corpus. In the Boykin case [86 Okl.Cr. 175, 190 P.2d 478] it was said in the majority opinion:

"The case of State ex rel. Dawson v. Sapp, supra [87 Kan. 740, 125 P. 78, 42 L.R.A.,N.S., 249] relied upon by the defendant, was discussed in the later Kansas case of City of Lawrence v. Kagi, 105 Kan. 520, 185 P. 60, 61, where the court distinguished those cases where the trial court by its af-

firmative act indefinitely suspended the pronouncement of judgment from those cases where the record disclosed that a motion for new trial was pending, or that it was evident that the court at some time had the intention of pronouncing judgment in accordance with the verdict; it was therein stated:

"'Defendant appears to rely on State ex rel. Dawson v. Sapp, 87 Kan. 740, 125 P. 78, 42 L.R.A.,N.S., 249, where the court indefinitely suspended the rendition of judgment as a disciplinary measure and with the understanding that judgment might or might not be subsequently rendered, depending on the good behavior of the defendant. This was held to be be-beyond the power of the court. In holding this it was declared that the court has practically unlimited discretion in the postponement of judgment so long as the rendition at some time remains in contemplation. It is true that the motion for a new trial was not determined and judgment rendered until the term succeeding the one in which the verdict was returned, but the passing of the term did not impair the power of the court to render judgment at a later term. In effect that was said in State ex rel. Dawson v. Sapp, supra, so much relied on by the defendant. While holding that an indefinite suspension of a judgment for disciplinary purposes was beyond the power of the court, it was further said:

"' "Whether a postponement is rightful depends, not upon its length or definiteness, nor upon whether it extends beyond the term, but upon its purpose and character." '

"The above opinion is one of the strongest authorities supporting the judgment of Judge Hunt [the trial judge]. Oklahoma does not adhere strictly to the general rule hereinabove cited. It has been held in many cases that if the court's purpose in postponing imposition of sentence is incident to administration of justice, the court's jurisdiction to impose sentence is not lost even though the term in which the verdict or plea of guilty was entered has passed. But, in many of the same Oklahoma decisions the minority rule adopted in a few states has been followed in which it was held that where the trial court allowed several terms of court to pass and made no order fixing a definite date for pronouncing sentence, but indefinitely delayed the pronouncement for an unreasonable time, the trial court thereby lost jurisdiction to pronounce the judgment and sentence. Collins v. State, 24 Okl.Cr. 117, 217 P. 896; White v. State, 45 Okl.Cr. 289, 283 P. 581; Ex parte Coley, 67 Okl.Cr. 482, 94 P.2d 968; Willard v. State, 67 Okl.Cr. 192, 94 P.2d 13; Ex parte Hawkins, 70 Okl.Cr. 426, 106 P.2d 1112; In re Booth, 74 Okl.Cr. 406, 126 P.2d 751.

"We still adhere to the rule set forth in the Oklahoma cases hereinabove cited, but we do not intend to extend the rule to those cases where a motion for a new trial is pending or where it may be said from the record that the defendant by his conduct has waived his right to have the speedy imposition of the judgment and sentence."

The court went on further to say:

"There is no fixed inflexible rule by which it may be said that any definite period of time amounts to an unusual delay in the pronouncement of sentence so as to deprive the court of jurisdiction. As to whether the court lost jurisdiction to pronounce the sentence by reason of an unusual delay by indefinitely postponing the pronouncement of sentence, will be determined by examination of the facts in each particular case. As above noted, we have no provision of the code controlling such question, but the cases supporting defendant's view de-

pend for their conclusion upon the broad ground that public policy will not permit a court which is without the power to pardon an accused or suspend a sentence to indefinitely postpone the pronouncement of sentence, because that would be tantamount to suspending the sentence and the trial court should not be allowed to do indirectly that which it could not do directly. However, the question as to whether the court lost jurisdiction to pronounce the sentence by indefinitely postponing the imposition of sentence is not presented in this case for the reason that the court had not yet reached the point in the progress of the case where the court had the authority to pronounce sentence. A motion for new trial had been filed by counsel for defendant. Before the court could pronounce sentence, it had to dispose of the motion interposed by defendant. By the motion, the defendant complained of error in the proceedings which he claimed entitled him to a new trial. Defendant filed the motion. He had the burden of sustaining his motion. If the court had sustained his motion for new trial, even as late as September 21, 1945, no complaint would have been made by the defendant. If the court had overruled the motion for new trial at the time it was filed, or at any time subsequent thereto, there would have been nothing left but the pronouncement of the judgment and sentence. Under such a situation, the rule of law contended for in the dissenting opinion and the line of authorities set forth to sustain such rule would have been applicable."

And, in conclusion, it was said:

"Had the motion for a new trial been overruled, then the responsibility for pronouncement of judgment and sentence, and the delays incident thereto would have been single and alone that of the trial court. The duty for action would become that of the court alone when the motion for new trial, the instrument of obstacle motivated by defendant himself, had been overruled, and when all that remained to be done was the pronouncement of judgment and sentence by the court. Certainly, as was said in the cases hereinabove quoted where the defendant was at liberty on bail, he is deemed to have acquiesced in any delay in the speedy disposition of his motion for a new trial. To so hold will guarantee the rights of defendant without violence to the rights of the state. It provides justice for the defendant and does not open the door to the possibility of fraud and collusion to permit a convicted person to go at large without paying the penalty for his crime. The defendant by his acquiescence in the long delay in passing upon his motion, no doubt silently hoped that he would never have to account for his misdeed, but justice though long delayed should be meted out to him by requiring him to serve the penalty provided as punishment for his misdeed."

Judge Barefoot dissented, taking the view that the court lost jurisdiction even though a motion for new trial was pending. Judge Hunt, the trial judge in the Boykin case, attempted to distinguish the Collins case (24 Okl.Cr. 117, 217 P. 896) where a motion for new trial had also been pending. But the effect of the Boykin case was to overrule the Collins case as concerns the effect of a motion for new trial.

The rule stated in Ex parte Coley, supra (67 Okl.Cr. 482, 94 P.2d 968) would seem to apply to the within case. There it was said:

"Sentences need not necessarily be imposed at the same term of court at which the verdict or plea of guilty was had, and, if the court's purpose in postponing the imposition of sentence is incident to the administration of justice within its conceded powers, and its orders postponing sentence are unconditional and to definite periods,

the jurisdiction of the court to impose sentence at a term after the trial term is not affected. But in the case at bar several terms of court had passed and no order was entered postponing the pronouncement of judgment and sentence. The court, under the law, had lost jurisdiction."

From a consideration of all the Oklahoma cases on the subject, the rule without doubt is that where there is an affirmative act on the part of the trial court indefinitely suspending the imposition of sentence, cancelling of defendant's appearance bond and permitting his release on his own recognizance, and several terms of court expire, the court loses jurisdiction to thereafter impose sentence.

In the within case the defendant had a record of a previous conviction, so the court was not authorized to impose suspended sentence. 22 O.S.A. §§ 991, 992. The same objective could be attained, or so it seems to have been thought, by permitting the petitioner to go free, and postponing sentence for an indefinite period. There was an attempt to get around the law by doing indirectly what could not be done directly. This delay might be for a year, and if for a year, for any number of years, with the possibility of imposition of sentence summarily at any time at the whim of the then district judge or a remote successor. Thus, unlike where one is sentenced for a definite time and sentence suspended, and where the sentence would expire at a definite future date, the deferred sentence to an indefinite date would ever hang over petitioner's head, with his future life restricted, walled in, and hampered by chance and probability.

The motives of the court, counsel concedes, were the best. However, if the court had doubts as to the sufficiency of the information or evidence to convict petitioner in the first instance, at the time he indefinitely deferred sentence he could have appointed counsel to represent the accused, and if the evidence justified, have set aside the plea of guilty that had been entered, and a new trial granted.

The action of the court under the particular facts in the within case amounted to a limited pardon, and infringed on the prerogative of the Governor and the Pardon and Parole Board.

Having concluded that the trial court lost jurisdiction to impose the sentence complained of, it follows that the writ prayed for should be granted; and the Hon. H. C. McLeod, Warden of the Oklahoma State Penitentiary, is directed to release the petitioner, Lloyd Grant, on receipt from the Clerk of this Court of a certified copy of this opinion.

BRETT, P. J., and NIX, J., concur.