[Crim. No. 1890. Second Appellate District, Division Two.—March 14, 1930.]

THE PEOPLE, Respondent, v. BEATRICE H. MANES, Appellant.

A. Brigham Rose for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—This is an appeal from a judgment pronounced upon the verdict of a jury finding the defendant guilty of forgery and from an order denying her motion for a new trial. The first reason assigned by appellant for a reversal of the judgment and order is that the evidence is insufficient to establish the offense. We shall refer to the testimony produced by the prosecution for the purpose of supporting the verdict.

The lady to whom we shall hereafter refer as Peggy Tompkins, which was her maiden name, had been married to a man by the name of Murphy and had been divorced prior to her acquaintance with the appellant and the man with whom appellant lived and who was known as August W. Manes, but whose real name was Poolitzski or Povlitzski. These three persons lived in the same bungalow court for some time prior to August 24, 1928, and had become very friendly. Peggy Tompkins had loaned to August Manes various sums of money approximating $200. On the date mentioned, August Manes sold to Peggy Tompkins a lot in Huntington Park for the total sum of $800, representing to her, in the presence of appellant, that it was a great bargain and saying to her that she could pay him $30 down; that he would apply what he owed her and that the remainder could be paid at the rate of $15 per month. Peggy Tompkins says that she paid him the $60 (the sum of $600 appears in one instance in the record, but otherwise the sum referred to is $60), and signed one or two papers for the purchase, one of which papers said the lot was owned by a Mrs. Olive Mills. About a week or so later Manes and appellant moved from the bungalow court. On August 29, 1928, a deed from Olive H. Mills conveyed the lot in question to August W. Manes and Beatrice H. Manes, as joint tenants. A deed dated August 25, 1928, signed by appellant and Manes conveyed the property to "Peggy Tompkins, wife of Harold Tompkins," although she was in fact unmarried

at the time. Peggy Tompkins did not see the deed prior to its recordation. On August 24, 1928, a deed of trust to the Los Angeles-First National Trust and Savings Bank as trustee for the benefit of Olive H. Mills, and to secure the payment of the sum of $800, payable at the rate of $15 per month appears to have been executed. These two deeds and the trust deed were all filed for record on December 14, 1928. The record indicates that the trust deed here mentioned was one of those signed by Peggy Tompkins on August 24, 1928, although the pages were so turned that the witness did not understand she was signing a trust deed. She did not acknowledge her signature before a notary. On October 10, 1928, Manes and the appellant went to the office of the Pacific States Savings and Loan Company where Manes introduced the appellant as Peggy Tompkins. There they made final arrangements for a loan of $3,100 and the appellant, as Peggy Tompkins, signed a trust deed and note for that amount. She also represented that the property was her separate property and that her husband was in the navy and for that reason could not sign the papers. About $2,600 of the loan was paid out to a man named Robert B. Cook, a contractor, who built a house upon the lot. Cook was not a witness in the case, but there can be no doubt that the Pacific States Savings and Loan Company was defrauded by the execution by appellant of the note and trust deed in the name of Peggy Tompkins. The evidence is ample to justify the jury's verdict. In fact, it is so self-evident that discussion is not necessary.

Counsel has grouped together six assignments of error relating to the reception and rejection of testimony, i. e., set one instance after another down without further argument than to say in each case that it is error or prejudicial to the rights of the defendant. Following all of these assignments he cites some authorities relating to cross-examination, but in no place does he attempt to assist us by making application of the law to any of the instances he assigns as erroneous. This is insufficient. However, we have been at pains to examine the entire record, largely because it has been difficult to understand the brief of counsel and we have failed to discover any error in any of the assignments. Under a heading of "Point three" counsel says: "The court erred by virtually declaring a blockade against defense

evidence.'' He then cites subdivisions 1, 3, 7 and 15 of section 1870 of the Code of Civil Procedure. Without further ado he then quotes fifteen instances in which the court rejected testimony offered by the appellant. No other or further argument is made and no effort made to apply the three fundamental rules of evidence to the assignments of error. We have time and again pointed out to counsel that it is their duty to present their argument and authority to us in such a manner as to indicate the error complained of, and that in case of their failure so to do we are not called upon to assume their labors. But again we say that we have discovered no error.

Counsel assures us that the district attorney was guilty of misconduct. At no place did he ask the court to correct the harm if any was done and this would be a sufficient answer to appellant's claim in this regard. In addition to that, however, we find no misconduct on the part of the district attorney. And finally, the learned trial judge was meticulously careful in his admonitions to the jury to disregard all extraneous matter, including the remarks of counsel. Not once, but several times, he advised them of their duty in this particular.

The same failure to argue or aid us with authority is apparent when counsel presents certain instructions which were given and certain others which were requested and not given. We have examined the instructions and are of the opinion that the jury was fully and fairly advised of its duty and of the law applicable to the issues of the case.

The verdict was returned on August 14, 1929. The defendant waived time for sentence and made oral application for probation. The time for passing on the application was set for August 22, 1929, and on that date, with the defendant and her counsel in court, it was continued to September 12, 1929. On September 12th, the application was denied and defendant made a motion for a new trial, not upon the ground, however, that the time for pronouncing judgment had elapsed, which motion was denied on September 16th, and sentence pronounced. It is now asserted that the court had lost its jurisdiction to sentence the defendant. Assuming that the waiver of time for sentence by the appellant on August 14th did not carry the time beyond the twenty-day period mentioned in section 1191 of the

Penal Code, we have a situation exactly parallel to that considered in *People* v. *Okomoto,* 26 Cal. App. 568 [147 Pac. 598]. There the court said: "Here it appears that the defendant was entitled to a new trial; but it appears that a new trial was not refused, inasmuch as he did not ask for it. . . . It has been held by this court that, in the absence of any objection made by the defendant at the time of pronouncing judgment and in the absence of any demand made by him *for a new trial upon the ground that the legal time limit had expired, the court might rightfully enter the judgment.* (*People* v. *Polich,* 25 Cal. App. 464 [143 Pac. 1065].) A similar opinion was indicated by this court in the case of *In re Hemstreet,* 18 Cal. App. 639 [123 Pac. 984], where it was said that under those sections of the Penal Code the trial court should 'upon application therefor' grant defendant a new trial." (Italics ours.) The proper course of procedure is set forth again in *People* v. *Weimer,* 31 Cal. App. 352 [160 Pac. 689].

█ The last contention of appellant is that the trial court should have granted a new trial upon an affidavit presented by her and sworn to by one Paul Angelillo to the effect that he had been informed by an unnamed juror on the day of the verdict that they had found out appellant "had spent five years in the penitentiary for the same sort of stuff and has been pulling these fast ones for a long time; that's probably why she was scared to take the stand." It is manifest from the affidavit that affiant had no personal knowledge of the facts. His information and belief was based solely upon the indefinite and uncertain statement made to him by the juror. The trial court was governed by the rule announced in *People* v. *Albori,* 97 Cal. App. 537 [275 Pac. 1017], and properly denied the motion for a new trial based on the ground discussed.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 28, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1930.

All the Justices present concurred.