130 Cal.Rptr.2d 418 (2003)
106 Cal.App.4th 137
The PEOPLE, Plaintiff and Respondent,
v.
Michael Glenn BRAXTON, Defendant and Appellant.
No. A096083.
Court of Appeal, First District, Division Five.
February 10, 2003.
*419 Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Rene A. Chacon, Supervising Deputy Attorney General, Bruce Ortega, Deputy Attorney General, for plaintiff and respondent.
Richard C. Neuhoff, under appointment by the Court of Appeal, San Francisco, for defendant and appellant.
Certified for Partial Publication.[*] Review Granted April 23, 2003.
JONES, P.J.
Michael Glenn Braxton appeals his conviction by jury verdict of attempted murder. *420 (Pen.Code, §§ 187/664.[1]) The jury also found true the allegations that he personally and intentionally discharged a firearm in the commission of the attempted murder, which proximately caused great bodily injury to the victim. (§§ 12022.53, subd. (d), 12022.7, subd. (a).) Appellant contends the trial court erred in refusing his oral motion for new trial. He also asserts evidentiary and instructional error.

BACKGROUND
Since 1995 or 1996, appellant owned and lived in a mobile home which he parked in a lot rented from a Vacaville mobile home park. Gail Billa and her husband managed the park; Beatrice Bruno was the assistant manager.
In early 1997, Carol Prange and her teenage son, Adam, moved into the mobile home adjacent to appellant's. The relationship between appellant and Prange was strained. Prange claimed that appellant became upset about "stupid little things," such as her dog lying on his lawn or "something growing in his yard" about which she knew nothing; he threatened several times to shoot the dog if she did not keep it at her house.
Appellant claimed that Prange's dog was intimidating and roamed in his yard, occasionally preventing him from retrieving his mail. He also claimed that Adam Prange and his companions hung around Prange's house, drinking, smoking, and cursing, and threw debris into his yard. He once saw Adam Prange arrested for possession of a handgun. Appellant complained several times to the park managers about the Pranges' conduct, but he received no response to his complaints.

August 30, 1999 Shooting Incident
Prange was inside her house when she heard appellant yelling "hysterically" at Adam and Adam's friends, Brandy and Matt. When she went outside to see what was going on, appellant yelled obscenities at her. He eventually returned to his house, and Prange learned from Adam and his friends that appellant was angry because Matt had leaned his bicycle against appellant's fence.
Shortly after Prange returned to her house, she heard a gunshot. She ran outside and saw nothing. Adam and his friends told her the shot came from near appellant's house. Prange ran to assistant manager Bruno's house and told Bruno she thought appellant had fired a gun. At Bruno's direction, Prange called the police.
Officer Tim Garrido arrived within minutes and contacted appellant, who was calm and cooperative with him. Appellant told Garrido that several teenagers, including Adam, were riding their bicycles on his lawn; all complied with his request to stop except Adam, who remained on the lawn and stared at him. He told Garrido that the incident angered him, so he fired a gun into the ground of his own backyard to release his frustration. He also related his ongoing dispute with Prange about her dog.
Garrido noted a strong odor of alcohol on appellant's breath, but no signs of intoxication. Appellant permitted Garrido and another officer to search his house. They found two loaded handguns lying on a dresser; one had the odor of a recent firing. They arrested appellant and placed him in jail.[2] When they informed him the *421 guns would be confiscated, he replied he could easily obtain another one. He also told them he had shot at people in the past, would not hesitate to hurt people in the future, and as a teenager had a street nickname "the hit man." He was 50 years old in 1999.

September 12, 1999 Eviction
Because of appellant's arrest, the park's owner, managers, and attorney decided to evict him. On September 12, after his release from jail, he was served with a 60 day notice of eviction.

September 14, 1999 Shooting
Manager Gail Billa and assistant manager Bruno left the mobile home park office simultaneously, walking in separate directions to their houses. Bruno passed appellant, going the opposite direction. They did not acknowledge each other. Bruno and appellant had always had a cordial relationship, without any disputes. She knew about his eviction, but had not participated in the decision. A few seconds after passing Bruno, appellant called her name and she turned around. He reached in his belt, pulled out a gun, and pointed it at her head. He was standing approximately five feet from her. She told appellant, "Mike, I did nothing to you. Don't do it." Appellant did not reply. Bruno grabbed the gun and felt something "swish" past her head. Her feet got "tangled up" as she tried to run away, and she fell to the ground, hitting her head. Her next memory was of a neighbor praying by her side.
Billa had arrived home when she heard a loud noise. She looked outside to see appellant fire two shots. As the smoke cleared, she saw Bruno walking unsteadily toward her house. She then heard Bruno say, "No, Mike, don't," after which appellant fired at her chest, slamming her to the ground. He then fired two more shots at her.
Mobile home park resident Donna Stefani heard a cap gun sound outside her house and went to the window. She saw appellant holding a gun to Bruno's forehead, then lower the gun and shoot her in the abdomen. Stefani heard two or three more shots as she was going to the telephone to call "911." After making the call, she went outside to Bruno, who lay 10 to 15 feet from the spot where Stefani had first seen her.
Bruno was shot in the index finger of her right hand and three times in the chest. She suffered a cracked rib and bruised lung. She lost part of her liver; her finger does not bend properly; and she has difficulty breathing and holding long conversations.
Appellant was arrested within the hour of the shooting while driving west on Interstate 80. His blood alcohol level two hours after the shooting was 0.18 percent, and he had an odor of alcohol, but he did not manifest signs of intoxication, e.g., unsteady gait, slurred speech.

Defense
Appellant testified in his own defense. He has been an alcoholic for much of his life, occasionally suffering alcoholic blackouts. He can be violent when drunk. He has been in residential treatment centers for substance abuse several times. He is also a diabetic, but he stopped taking his new medication several days before the September 12 eviction because it upset his stomach.
*422 The September 12 eviction notice shocked and angered appellant because he believed he had always been a good tenant. His financial circumstances were also precarious. He had lost his 13 year job at American Home Foods the previous December when the plant closed, his finances were low, and he did not know where he would go. He then began a drinking binge, during which he stopped eating. He seriously contemplated suicide and bought two guns and some bullets.
Sometime on September 14, appellant fixed the details of his suicide: he would drive to a familiar location in an Oakland park and shoot himself in the head. He put one of the guns in his waistband, got into his car, and drank until he departed.
As he was driving to an exit of the mobile home park, he saw Bruno walking home. He liked her and they had never had problems. He decided to ask her about the eviction, and then leave. He got out of his car and for no explicable reason he pointed his gun at her head. She grabbed his gun, a shot rang out, and he blacked out. He next remembered getting back in his car, departing for the Oakland park where he had planned to kill himself, and being stopped by the police, with whom he was cooperative. At trial he was extremely remorseful for his conduct toward Bruno. He did not know why he shot her, and denied having any intent to kill her.
Appellant's estranged wife testified that when he telephoned her on September 12 after receiving the eviction notice, he sounded drunk. He called again on the morning of September 14. Crying, he told her was preparing to kill himself, then hung up. She tried calling him several times afterwards, but received no answer. She recounted that he could be violent when drunk, a "Dr. Jekyll and Mr. Hyde."
Dr. Samuel Benson, a forensic psychiatrist, reviewed appellant's medical and police records and examined him five times. Dr. Benson diagnosed appellant as an alcoholic with a history of blackouts that indicated brain damage. He explained that during such blackouts a person, although ambulatory, is not conscious and loses impulse control. He opined that appellant had a blood-alcohol level of .21 to .23 percent when he shot Bruno and was highly intoxicated. Such a blood alcohol level can, but does not always, cause a blackout in a person with a blackout history. Dr. Benson also opined that on September 14 appellant was suffering from mental illness, including major depression; was under intense stress due to his loss of job, estrangement from his wife and son, fear of eviction and possible homelessness; and had an elevated blood-sugar level that would cause diminished thinking in almost any person.

Trial and Sentence
Appellant originally entered a plea of not guilty by reason of insanity. He withdrew it following the presentation of evidence and before jury instructions. The jury found him guilty of attempted murder but found not true the allegation that the attempted murder was committed willfully, deliberately, and with premeditation. Following his conviction he was sentenced to a total prison term of 34 years to life: the upper term of nine years for the attempted murder, plus a consecutive 25 years to life for personally discharging a firearm during the attempted murder and causing great bodily injury (§ 12022.53, subd. (d)). The court also imposed a three year consecutive term for personal infliction of great bodily injury in the commission of a felony (§ 12022.7), but stayed the term pursuant to section 654.

*423 DISCUSSION

I. Motion for New Trial
Appellant contends the court committed reversible error in refusing to hear his oral motion for new trial.

A. Procedural Background

The jury returned its guilty verdict on June 14, 2001, and the case was set for sentencing on August 9.
At the outset of the sentencing hearing defense counsel announced he was not prepared to proceed to sentencing.
"[DEFENSE COUNSEL]: ... There's a matter that must be resolved prior to [appellant's] being sentenced, [¶] I've got affidavits from three of the jurors that indicate there may be possible misconduct by the jury in reaching their verdicts. And I think
"THE COURT: How come there's no motion that's been filed? It's been eight weeks since this matter was set.
"[DEFENSE COUNSEL]: Your Honor, I haven't filed a written motion for new trial. I could make it orally, but I prefer to do it in writing.
"THE COURT: Let me just state, Counsel, today is the date and time for sentencing. Normally motions for new trial are filed before the date for sentencing, and I haven't received anything. So as far as this Court is concerned, we are going to proceed to sentencing.
"[DEFENSE COUNSEL]: Certainly on [appellant's] behalf, I would like to make a motion for new trial.
"THE COURT: I think that, given the seriousness of these charges, any motion of that magnitude should be done in writing and in advance of today's hearing. I will certainly not entertain any oral motion.
"[DEFENSE COUNSEL]: Well, if that's the case, I'd like to make a record, then. [¶] ... The investigation I've received, reports I've received so far, indicate that three jurors have advised me of possible misconduct. And I have three declarations signed by jurors [number 8, 11, and 12.] All three of these jurors signed a declaration in which they declared the following
"THE COURT: [Defense counsel], this all seems quite out of order. Again, you seem to be continuing to try to make a motion for a new trial. As I indicated, the Penal Code and the Rules of Court require that such a motion is to be made in writing. There's supposed to be notice provided to the other side, an opportunity to be heard, and such a motion is to be entertained at the time of sentencing. [¶] Again, this Court has not received anything. So I don't quite understand what it is that you're trying to do.
"[DEFENSE COUNSEL]: Your Honor, I'm not certain that a motion for new trial must be made in writing. As I indicated, I would prefer that the matter be continued so that ... I could file a written motion.
"THE COURT: Perhaps, then, if the Court heard a reason for continuing this why wasn't a motion to continue filed in advance of the hearing as required by Penal Code Section 1050? Good cause is needed. Motions to continue are supposed to be filed at least two days before the hearing.
"[DEFENSE COUNSEL]: Your Honor, only recently was I able to obtain the declaration of [juror number 8, who] was on vacation.
"THE COURT: When did you receive it?
"[DEFENSE COUNSEL]: I believe it was approximately July 28th.
*424 "THE COURT: [Deputy District Attorney], did you wish to be heard regarding this matter?
"[DEPUTY DISTRICT ATTORNEY]: Yes, Your Honor. Apparently [defense counsel] says he has three declarations. The last one, I take it, would be [juror number 8, whose declaration was received] at least a week and a half or more ago. The others pre-date that. I don't understand whywe're here today, the victims are here today, obviously with a great expectation of proceeding. And there is the emotional impact of preparing to come forward today and also speak to this Court today on sentencing to resolve this matter. And I think it does a great injustice to them to find themselves in this situation of basically coming in here, sitting, and within a matter of just a few seconds, having their expectations and all that impact upon them, their victimization continued. And I really want to make that known ... I think it's a great injustice to them.
"THE COURT: Are you objecting to allowing an oral motion to be entertained by the Court at this time?
"[DEPUTY DISTRICT ATTORNEY]: Oh, absolutely.
............
"THE COURT: The sole concern that this Court has is whether or not there's good cause to proceed in the manner that you [defense counsel] are proposing. I've heard [deputy district attorney's] comments, but, again, today is the date and time for sentencing. A motion for a new trial, if one were to be filed, should have been on file today, so that the Court could address that issue and, if it was to be denied, then to proceed to sentencing. [¶] The Court is not going to entertain an oral motion for a new trial, there being no excuse offered for the failure to file a written motion. I think in a case of this magnitude, if there's going to be a motion for new trial, it has to be done in writing. I've not heard yet a complete explanation as to why that was not done. I'm not going to entertain an oral motion for a new trial. [¶] And the Court is prepared to go forward with sentencing, unless you can establish some good cause for why you have not filed it.
"[DEFENSE COUNSEL]: My explanation is this: It's always difficult to contact jurors, especially when we're not given the personal identification information. Secondly, that the issue that I believe is a basis for the new trial has to do with misconduct. I have researched the issue, and it's somewhat complicated. It's a serious enough case that I ... don't want to just file a very quick boilerplate motion .... I ... think it's necessary that it be briefed adequately and written properly. [¶] Again, I ... think that [appellant] ... has a right to make a motion for new trial, for those reasons...."
............
"THE COURT: The Court will deny defense counsel an opportunity to make an oral motion for a new trial."

B. Analysis

1. Failure to hear the oral new trial motion was error.

"A motion for a new trial is a legislatively established procedure which it is the right of any convicted defendant to invoke." (People v. Sarazzawski (1945) 27 Cal.2d 7, 17, 161 P.2d 934.) Juror misconduct is a statutorily authorized ground for seeking a new trial. (§ 1181, subds. 2-4.)
A defendant must move for new trial before pronouncement of judgment, and must specify the ground(s) on which *425 his motion is based. (§ 1182[3]; Thurmond v. Superior Court (1957) 49 Cal.2d 17, 19, 314 P.2d 6; People v. Taylor (1967) 250 Cal.App.2d 367, 372, 58 Cal.Rptr. 269; People v. Grake (1964) 227 Cal.App.2d 289, 292, 38 Cal.Rptr. 666.) Although a motion for new trial based on juror misconduct is generally supported by writings, e.g., juror affidavits (see People v. Hedgecock (1990) 51 Cal.3d 395, 415, 419, 272 Cal.Rptr. 803, 795 P.2d 1260; People v. Pierce (1979) 24 Cal.3d 199, 208, 155 Cal.Rptr. 657, 595 P.2d 91), the motion itself need not be written, and, historically, may be oral. (People v. Ah Sam (1871) 41 Cal. 645, 651; People v. Simon (1989) 208 Cal.App.3d 841, 847, 256 Cal.Rptr. 373; People v. Haldeen (1968) 267 Cal.App.2d 478, 481, 73 Cal.Rptr. 102; People v. Grake, supra, 227 Cal.App.2d at p. 292, 38 Cal.Rptr. 666.) When a motion for new trial is properly before the court before pronouncement of judgment, the court must determine the motion. (§ 1182; Thurmond v. Superior Court, supra, 49 Cal.2d at p. 19, 314 P.2d 6; People v. Taylor, supra, 250 Cal.App.2d at p. 372, 58 Cal.Rptr. 269; People v. Grake, supra, 227 Cal.App.2d at p. 292, 38 Cal.Rptr. 666.)
Here, appellant made a timely motion for new trial by applying for it before judgment. (§ 1182.) He specifically articulated the permissible ground on which he based his motion: jury misconduct. He was simultaneously prepared to offer three juror declarations to support the motion. Because appellant satisfied the essential criteria for moving for new trial, the court was obligated to determine his motion. Its refusal to entertain the motion was error.
The People assert the court did not err, relying on the well-established rule that a court has broad discretion to grant or deny a motion for new trial. (People v. Seaton (2001) 26 Cal.4th 598, 693, 110 Cal. Rptr.2d 441, 28 P.3d 175.) However, the rule presupposes that the trial court has in fact exercised its discretion as to the merits of the motion, which it does not do if it refuses to consider the motion at all. Here, the court did not purport to exercise any discretion on the motion's merits because of its mistaken belief that statutes and court rules mandate that motions for new trial can only be made in writing.
The People also assert the court's refusal to consider the motion avoided unfair treatment to the People, insofar as they had no advance warning of the motion, and thus no time to prepare a rebuttal. The assertion is unfounded.
When a defendant seeks a new trial based on juror misconduct, the court must first determine whether the juror declarations offered to test the verdict are admissible. (Evid.Code, § 1150, subd. (a); People v. Perez (1992) 4 Cal.App.4th 893, 906, 6 Cal.Rptr.2d 141.) If the court, after reviewing appellant's three proffered declarations, had determined they were inadmissible, it could have denied the motion on that basis, and the People would not have been denied an opportunity to respond. (4 Cal.App.4th at pp. 906-907, 6 Cal.Rptr.2d 141.) On the other hand, if the court determined the declarations were admissible and demonstrated possible misconduct, and the People then professed difficulty in offering an appropriate extemporaneous rebuttal, the court could readily have granted them a continuance to prepare a more thorough response.
In fact, the deputy district attorney's objection to permitting appellant to make *426 his motion for new trial did not derive from the fact the deputy was unprepared to respond to it. His objection stemmed from his concern that delaying, and possibly canceling, the sentencing that was scheduled for that day in order to hear the motion for new trial would be unjust to the victim and other interested parties who were gathered in the courtroom in anticipation of the scheduled sentencing.
Finally, the People argue that the court did not abuse its discretion because defense counsel failed to offer a satisfactory explanation why he had not filed a written motion for new trial, even though he stated he would have preferred to do so. The adequacy of defense counsel's explanation has no bearing on the propriety of the court's ruling. Defense counsel's gratuitous remarks notwithstanding, appellant presented a timely, specifically-grounded, oral motion for new trial.

2. Availability of a new trial remedy under section 1202.

Appellant relies on section 1202 to argue that the court's refusal to hear his new trial motion requires that we grant him a new trial.[4] Under the peculiar facts of this case we agree, although we believe that section 1202 is not self-executing, that is, a defendant is not automatically entitled to a new trial when the court refuses to hear his motion for new trial.
Generally, motions for new trial are governed by sections 1179-1182. Section 1179[5] defines a new trial, while section 1180 provides that the grant of a new trial places the parties in "the same position as if no trial had been had."[6] Section 1181 sets forth nine specific grounds for the grant of such a motion,[7] and section 1182 requires the motion to "be made and determined before judgment ..."[8] In effect, section 1202 adds two additional bases for a new trial to those listed in section 1181: when the court fails to pronounce judgment in a timely manner or when the court refuses to hear a new trial motion or fails to resolve it before pronouncing judgment. (See generally, 6 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Criminal Judgment, § 92.)
*427 We note that section 1181 not only limits the grounds for a new trial, but expressly conditions a new trial "upon [defendant's] application." Although section 1202 contains no such statutory language, appellate courts have consistently imposed a similar requirement, i.e., a motion by the defendant, to claim the benefit of its first provision and concluded that a defendant waives the right to a new trial when judgment is not timely pronounced unless he or she specifically demands it.
For example, in People v. Von Moltke (1931) 118 Cal.App. 568, 5 P.2d 917, the trial court pronounced judgment over the defendant's objection that it had been unduly delayed. While agreeing that the delay was improper, the appellate court declined to order a new trial "since the defendant, although he objected thereto, did not ask for a new trial...." (Id at p. 573, 5 P.2d 917.) In People v. Manes (1930) 104 Cal.App. 493, 498, 285 P. 1073, the defendant also was sentenced beyond the prescribed date. Prior to sentence he had made a motion for a new trial, but not on the ground that judgment had not been pronounced. Relying on People v. Okomoto (1915) 26 Cal.App. 568, 573, 147 P. 598, the court in Manes concluded there was no merit to the contention that the court had lost jurisdiction to pronounce sentence and defendant was entitled to a new trial. "`Here it appears that the defendant was entitled to a new trial; but it appears that a new trial was not refused, inasmuch as he did not ask for it ... It has been held by this court that, in the absence of any objection made by the defendant at the time of pronouncing judgment and in the absence of any demand made by him for a new trial upon the ground that the legal time limit had expired, the court might rightfully enter the judgment'" (People v. Manes, supra, 104 Cal.App. at p. 498, 285 P. 1073, citing People v. Okomoto, supra, 26 Cal.LApp. at p. 573, 147 P. 598, italics in original.) And, in People v. Cunningham (2001) 25 Cal.4th 926, 1044, 108 Cal.Rptr.2d 291, 25 P.3d 519, our Supreme Court observed, "Section 1202 provides that if the judgment is not rendered or pronounced within the statutory time . .. the defendant is entitled to a new trial if he or she requests one. [¶] ... Although defendant objected generally to the 28-day continuation of sentencing from the June 16, 1989, hearing to the hearing that was held on July 14, 1989, he did not move for a new trial. In any event, that delay between the two hearings did not result in a miscarriage of justice." (Italics added.)
By parity of reasoning, we conclude the requirement set forth in the Okomoto/Von Moltke/Cunningham line of cases should be imposed when a defendant asserts on appeal that he is entitled to a new trial because the trial court failed to resolve or hear a timely new trial motion. Both bases for new trialfailure to announce judgment in a timely manner and failure to hear or resolve a motion for new trialare contained in the same statute, and each contains parallel language directing a new trial when the trial court fails to follow the statutory directive. Both have the same goal: prompt imposition of judgment and sentence. Requiring the defendant to call the trial court's attention to this specific problem by a separate new trial motion enhances the likelihood of accomplishing this goal. If the defendant supplements his original new trial motion with a second new trial motion specifying the ground of refusing to hear or decide such a motion as required by section 1202, the trial court might well realize its error and would certainly be alerted that a refusal to hear the motion would require a new trial regardless of the motion's merits.
Although we endorse the imposition of such a requirement before a defendant *428 may claim the benefit of the second provision of section 1202, we conclude that any attempt by appellant to have complied with it in this case would have been futile. When appellant, via defense counsel, made his oral motion for new trial on the grounds of jury misconduct, the court repeatedly questioned the propriety of a motion for new trial that was not in writing and not filed before the sentencing hearing. As is evident from the quoted colloquy,[9]ante, the court's tone manifested its adamant conviction that an oral motion for new trial on the day scheduled for sentencing was wholly impermissible, and it would not consider hearing one. From the language of its questions and challenges to defense counsel, its conviction appears so strong that it would have denied even a request by defense counsel for a brief continuance to obtain authority for his observations that oral motions were permissible.[10] The court simultaneously made patently clear that it would not allow defense counsel a continuance to file a written motion and would not deviate from the scheduled pronouncement of judgment and sentencing. Of course, once judgment is entered in the court minutes, not only can a defendant no longer move for new trial, a court has no jurisdiction to set aside its judgment in order to entertain a motion for new trial. (People v. Sainz (1967) 253 Cal.App.2d 496, 500, 61 Cal. Rptr. 196; People v. Hales (1966) 244 Cal. App.2d 507, 511, 53 Cal.Rptr. 161.)
Therefore, in all likelihood, the trial court would have viewed as redundant (if not contemptuous) any attempt by defense counsel, on the date of sentencing, to make a second oral motion for a new trial on the ground that the court's refusal to entertain his first oral motion was erroneous. Furthermore, given the timing of the proceedings, defense counsel could only have made a second motion orally, and would have had to do so in the face of the court's specific final ruling that it was denying him "an opportunity to make an oral motion for a new trial." (See p. 424, ante.) A second motion would, in short, have been rejected.
As the great maxim on futility states: "The law neither does nor requires idle acts." (Civ.Code, § 3532.) If the court would not entertain one oral motion for new trial, if it would not permit a continuance so that motion could be presented in writing, if it considered defense counsel "quite out of order" for even trying to make a record of the basis for that oral motion, and if it stated specifically three times that it would not entertain an oral motion for new trial, defense counsel could have no reasonable expectation that the court would entertain a second oral motion.
In summary, the court erred in refusing to entertain appellant's timely new trial motion. Appellant was not permitted to create a record that would permit a reviewing court to measure the harm of that error. (Cal. Const., art. VI, § 13; see *429 People v. Sarazzawski, supra, 27 Cal.2d at pp. 11, 17, 161 P.2d 934.) He was relieved of any obligation to bring a second motion for new trial based on the court's refusal to hear his first motion, given the futility of such a second motion. For these reasons, appellant is entitled to a new trial under section 1202.

II. Evidentiary and Instructional Errors [**]

DISPOSITION
The judgment is reversed.
We concur: SIMONS and GEMELLO, JJ.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, part II of this opinion is not certified for publication.
[1] Unless otherwise noted, all further section references are to the Penal Code.
[2] According to the presentence report, appellant was arrested for discharging a firearm in a grossly negligent manner (§ 246.3) and threatening to kill or seriously injure another person (§ 422). The charges were dismissed after he was arrested for the September 14 incident from which this appeal derives.
[3] Section 1182 states, in relevant part: "The application for a new trial must be made and determined before judgment ... and the order granting or denying the application shall be immediately entered by the clerk in the minutes."
[4] Section 1202 states: "If no sufficient cause is alleged or appears to the court at the time fixed for pronouncing judgment, as provided in Section 1191, why judgment should not be pronounced, it shall thereupon be rendered; and if not rendered or pronounced within the time so fixed or to which it is continued under the provisions of Section 1191, then the defendant shall be entitled to a new trial. If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment or the making of an order granting probation, then the defendant shall be entitled to a new trial."
[5] Section 1179 states: "A new trial is a reexamination of the issue in the same Court, before another jury, after a verdict has been given."
[6] Section 1180 states: "The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the accusatory pleading."
[7] In abbreviated form, the specified grounds of section 1181 are (1) defendant's absence from trial; (2) jury's receipt of extra-judicial evidence; (3) jury's departure from deliberation without court permission and juror misconduct; (4) verdict by lot; (5) erroneous instruction, evidentiary ruling, or prosecutorial misconduct; (6) and (7) verdict contrary to law or evidence; (8) newly discovered evidence not, despite reasonable diligence, available to defendant during trial; and (9) lack of phonographic report.
[8] See footnote 3, ante.
[9] At various times during appellant's attempt to move for new trial the court stated: "I will certainly not entertain any oral motion;" "The Court is not going to entertain an oral motion for a new trial, there being no excuse offered for the failure to file a written motion;" "I'm not going to entertain an oral motion for a new trial;" "The Court will deny defense counsel an opportunity to make an oral motion for a new trial." (See pp. 423-424, ante.)
[10] Asked why no motion had been filed, defense counsel replied, "I could make [the motion] orally, but I prefer to do it in writing." Later, when the court stated that the Penal Code and the Rules of Court require new trial motions to be in writing, he replied, "I'm not certain a motion for new trial must be in writing." (See p. 423, ante.)
[**] See footnote *, ante.